**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BEN HEYWARD,

        Plaintiff,

vs.                                                             No. CIV 12-0258 JB/LFG

THE CREDIT UNION TIMES,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Complaint (Incorporating Authorities), filed April 27, 2012 (Doc. 7)("Motion to Dismiss"). The Court held a hearing on July 27, 2012. The primary issues are: (i) whether the Motion to Dismiss is premature as Plaintiff Ben Heyward has not been provided the identity of his critics in discovery; and (ii) whether the statements on which Heyward bases his defamation allegations fail to state a prima facie claim for defamation as a matter of law, because each statement: (i) is an unambiguous assertion of opinion; (ii) does not concern Heyward; (iii) is not a false assertion of fact; or (iv) is not defamatory. The Court will grant in part and deny in part the Motion to Dismiss. The Motion to Dismiss is not premature, because the Defendant Credit Union Times asserts that even if Heyward's allegations are taken as true, his allegations are not legally sufficient to state a prima facie claim for defamation. While the majority of the statements are not actionable for defamation, construing Heyward's allegations in the light most favorable to him, and drawing all reasonable inferences in his favor, the Court concludes that some of the statements Heyward alleges as defamatory could be actionable as defamatory, because they are not unambiguously opinion.

**<u>FACTUAL BACKGROUND</u>**

-1-

The Credit Union Times, an unincorporated publication owned by The National Underwriting Company, published an article entitled "Historic Development Stains CU's Balance Sheet" on April 6, 2011.  See Complaint for Defamation ¶ 11, at 2, filed Mar. 13, 2012 (Doc. 1)("Complaint"); Historic Development Stains CU's Balance Sheet, 22 Credit Union Times No. 13, at 2, filed Mar. 13, 2012 (Doc. 1-1)("Article").[1]  The Article reports about controversy surrounding a loan that  First Financial Credit Union of Albuquerque, New Mexico, made to Vincent Garcia and two other developers to finance the redevelopment of a building in downtown Albuquerque, at Copper Square.  See Complaint ¶ 11, at 2; Article at 1.  The Article notes that Garcia and the two other developers had been indicted with bank fraud, and that First Financial was forced to foreclose on the property.  See Article at 2.  Heyward, First Financial's Chief Executive Officer, was the subject of the Article.  See Complaint ¶ 11, at 2.  The Article "was based upon statements of anonymous persons and alleged 'critics[,]' which were untrue, false and inaccurate . . . ."  Complaint ¶ 12 at 2.

## PROCEDURAL BACKGROUND

On March 13, 2012, Heyward filed this lawsuit, alleging that the following twelve statements in the Article are false and defamatory.  See Complaint ¶ 15, at 2-9.

**STATEMENT 1:**

---

[1] "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."  Cabot v. Wal-Mart Stores, Inc., No. CIV 11-0260 JB/RHS, 2012 WL 1378529, at *3 (D.N.M. Apr. 10, 2012)(Browning, J.)(quoting Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)).  See Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir.1991)("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").  Thus, although the Article is not part of Heyward's written Complaint, because Heyward attached the Article to his Complaint, the Court may consider the Article as part of the Complaint in ruling on the Motion to Dismiss.

> But critics lay the responsibility for making the Copper Avenue loan at the feet of CEO Robert Heyward, alleging that the loan merely represented, the largest example of a 'cowboy style' of leadership that, they charged depended more on Heyward's desire to show off and make a big splash than on due diligence and responsibility that should characterize a safely run credit union.

Complaint ¶ 15a, at 3.

Heyward alleges that "[t]his statement is false and inaccurate as well as defames the reputation of Mr. Heyward." Complaint ¶ 15a, at 3.

**STATEMENT 2:** "Heyward's inclination to fire executives who have disagreed with him." Complaint ¶ 15b, at 3.

In his Complaint, Heyward does not contend that this statement is defamatory, but alleges only that "[t]his statement is inaccurate and untrue." Complaint ¶ 15b, at 3.

**STATEMENT 3:** "But all charged that Heyward's determination to make unilateral decisions and a lack of attention to detail led to the Copper Square loan and a significant number of poor loans." Complaint ¶ 15c, at 3.

Heyward alleges that this statement "is untrue and inaccurate." Complaint ¶ 15c, at 3. Heyward states that "had CU Times performed due diligence and a reasonable investigation rather than relying on the unsubstantiated opinions of the anonymous critics . . . it would have determined the allegations to be false and inaccurate." Complaint ¶ 15c, at 3.

**STATEMENT 4:** "The U.S. Attorney has indicted developers for fraud but critics blame CU CEO." Complaint ¶ 15d, at 4.

Heyward does not dispute either that the United States Attorney indicted the developers for fraud or that critics blamed him for approving the loan. Rather, he contends that "[t]his accusation . . . implies Mr. Heyward committed fraud by approving this loan . . . [which] maliciously defames Mr. Heyward's reputation in the industry as well as is simply not true." Complaint ¶ 15d, at 4.

**STATEMENT 5:** "Critics charge loan as the latest in a pattern of reckless lending." Complaint ¶ 15e, at 4.

Heyward alleges that "[t]his is inaccurate and untrue and defames [Heyward's] reputation . . . ." Complaint ¶ 15e, at 4.

**STATEMENT 6:** "For his part, Heyward did not answer detailed questions about the Copper Avenue loan, but reported that the credit union relied on the borrower's representations." Complaint ¶ 16f, at 5.

Heyward alleges that "[t]his statement implies that CU Times gave Mr. Heyward the opportunity to respond or comment on the allegations of [the] anonymous critics that CU Times relied upon as fact. This is not the case." Complaint ¶ 16f, at 5. Additionally, Heyward states that "the purported quoted statement by Mr. Heyward was inaccurate, taken out of context and incomplete. . . . [demonstrating] the bias and lack of due diligence on . . . the CU Times[' part]." Complaint ¶ 16f, at 5.

**STATEMENT 7:** "Heyward was the only one at First Financial with authority to sign off on the Copper Square Avenue loan, the critics said, and he knew what the credit union knew and went on to approve it anyway." Complaint ¶ 15g, at 5.

Heyward does not dispute that he "was the only person at First Financial who could approve the Copper Square loan due to its size, [but alleges that] the approval was based upon the representations and presentations of the business loan department at First Financial . . . ." Complaint ¶ 15g, at 5-6. He alleges that "the statement that he had the same information as his staff and despite this approved the loan is false and inaccurate." Complaint ¶ 15g, at 6.

**STATEMENT 8:** "Six of the credit union's executive team in place in February 2008 when First Financial made the loan have since left." Complaint ¶ 15h, at 6.

-4-

Heyward alleges that this statement is false, as "[t]here were never six members of the executive team," and defamatory, because this statement "falsely implies that there was a hostile work environment . . . ." Complaint ¶ 15h, at 6.

**STATEMENT 9:** "The critics argued their concern flowed from their observations that the Copper Avenue loan was only the largest in a systematic lending pattern without regard to due diligence, including the purchase business loan participations."[2] Complaint ¶ 15i, at 6.

In his Complaint, Heyward alleges that "[t]his quote [sic] is false, untrue, inaccurate [,] . . . misleading and defamatory . . . ." Complaint ¶ 15i, at 6.

**STATEMENT 10:** "Critics reported that Heyward had bought these loan participations with little or no due diligence from a credit union where he had worked previously . . . ." Complaint ¶ 15j, at 7.

Heyward states that this statement is defamatory to him and false. See Complaint ¶ 15j, at 7. Heyward alleges: "The false allegation of lack of due diligence coupled with the allegation that Mr. Heyward purchased the participation loans from a previous employer clearly implies that Mr. Heyward was guilty of some sort of wrong doing." Complaint ¶ 15i, at 8.

**STATEMENT 11:**

In further support of their allegations, the critics pointed out that the credit union's net worth has dropped steadily since Heyward took the helm in early 2005. NCUA[3]

---

[2] A loan participation is a "[c]ollaboration among lenders to share in a loan (or a package of loans) too big to handle for any one of them." BusinessDictionary.com, http://www.businessdictionary.com/definition/loan-participation.html (last visited Dec. 12, 2012).

[3] NCUA stands for National Credit Union Administration. See About NCUA, National Credit Union Administration, http://www.ncua.gov/about/pages/default.aspx (last visited Dec.10, 2012).

The National Credit Union Administration (NCUA) is the independent federal

records show that CU's net worth ratio at the end of 2005 stood at 12.32%, took a brief uptick to 12.37% in 2006 before falling steadily to 9.36% at the end of 2010.

Complaint ¶ 15k, at 8.

In his Complaint, Heyward alleges that the statement is false: "To imply that a decline is bad or otherwise abnormal merely because Mr. Heyward is the CEO is without any factual support, ignores outside economic factors and is defamatory."  Complaint ¶ 15k, at 8.

**STATEMENT 12:** "Critics acknowledge that CU's with all sorts of management have lost money in the poor economy since 2008 but maintained that Heyward's management has led First Financial into a significantly deeper hole than it would have been if Heyward was not CEO." Complaint ¶ 15l, at 9.

Heyward alleges that this quotation is not true and that, "to sustain this statement, CU Times would have to objectively prove that First Financial is worse off as a direct result of Mr. Heyward being CEO.  There are no facts to support this."  Complaint ¶ 15l, at 9.

Heyward alleges that these "defamatory statements made about Ben Heyward in the article caused irreparable damage to Mr. Heyward's reputation, specifically in the credit industry. . . . [from which he] continues to suffer damage . . . ."  Complaint at ¶ 17, at 9.

On April 27, 2012, the Credit Union Times filed its Motion to Dismiss, arguing: "Because each of the challenged statements either reports the constitutionally protected, unverifiable views of Heyward's critics or is otherwise not defamatory, Heyward's complaint states no claim for

---

agency that regulates, charters and supervises federal credit unions. With the backing of the full faith and credit of the U.S. Government, NCUA operates and manages the National Credit Union Share Insurance Fund (NCUSIF), insuring the deposits of nearly 94 million account holders in all federal credit unions and the overwhelming majority of state-chartered credit unions.

About NCUA, supra.

defamation and should be dismissed." Motion to Dismiss at 3.  The Credit Union Times asserts that: "None of the statements challenged . . . [are] actionable as defamation, because they are either incapable of being proven true or false, are not damaging to Heyward's reputation, are not reasonably capable of conveying the alleged defamatory meaning, or do not carry more than a defamatory 'sting' than the pleaded truth." Motion to Dismiss at 4.

The Credit Union Times contends that Statement 1 cannot be the basis of a defamation claim, because whether Heyward had a "cowboy style of leadership, and whether his leadership style depended more on his desire to show off and make a big splash than on due diligence and responsibility, are not factual statements that reasonably could be verified." Motion to Dismiss at 5 (internal quotations and alterations omitted).  The Credit Union Times asserts that a court must determine whether the alleged defamatory statement is constitutionally protected expression, which turns on whether a statement is sufficiently verifiable -- whether the statement can be proved or disproved.  See Motion to Dismiss at 5 (citing Marchiondo v. Brown, 98 N.M. 394, 400, 649 P.2d 462, 468 (1982); Mendoza v. Gallup Indep. Co., 107 N.M. 721, 723, 764 P.2d 492, 494 (Ct. App. 1988); Moore v. Sun Publ'g Corp., 118 N.M. 375, 382, 881 P.2d 735, 742 (Ct. App. 1994)).  The Credit Union Times contends that statements must be viewed in context to determine whether they would be understood by readers as verifiable facts, and here, the "article's attributing unfavorable views of Heyward to 'critics' unmistakably signals that those statements represent the subjective views of people with poor opinions of Heyward who therefore have negative things to say about him." Motion to Dismiss at 6 (citing Fikes v. Furst, 2003-NMSC-033, ¶¶ 18, 19, 134 N.M. 602, 81 P.3d 545).  The Credit Union Times additionally states that "[c]ourts have routinely held that allegedly libelous statements concerning an executive's leadership style are not actionable because they cannot be proven false."  Motion to Dismiss at 6-7 (citing Mangan v. Corporate Synergies

Group, Inc., 834 F. Supp. 2d 199 (D.N.J. 2011); Mino v. Clio Sch. Dist., 661 N.W.2d 586, 597

(Mich. Ct. App. 2003); Rose v. Hollinger Int'l Inc., 889 N.E.2d 644, 652 (Ill. Ct. App. 2008)).

In regard to Statement 2, the Credit Union Times states that Heyward "does not contend that

this statement is defamatory . . . and, indeed, it is not." Motion to Dismiss at 7. It argues that

"whether, and for what reason, [Heyward] may have terminated subordinates' employment simply

is not defamatory of him." Motion to Dismiss at 8 (citing Ullah v. Nat'l Westminster Bank, No. 94

Civ. 5167 (DC), 1995 WL 747831, at **1-2 (S.D.N.Y. Dec. 18, 1995); Bitsie v. Walston, 85 N.M.

655, 659, 515 P.2d 659, 663 (Ct. App. 1973)). As to Statement 3, the Credit Union Times asserts

that the statement, that it was Heyward's unilateral decision to make the loan, is true, as Heyward

concedes in his Complaint, and is not otherwise defamatory. See Motion to Dismiss at 9 (citing

Complaint ¶15g, at 5). The Credit Union Times contends that "substantial truth is a defense to [a]

defamation claim," and the "charge that the loan was the result of a 'lack of attention to detail' is,

at the very least, substantially true." Motion to Dismiss at 9 (citing Cory v. Allstate Ins., 583 F.3d

1240, 1244 (10th Cir. 2009)). The Credit Union Times argues that the substantial truth of the

statement is supported by considerable evidence, including: (i) Heyward's admission in his

Complaint that he was not privy to the same information regarding Garcia as was his staff; and (ii)

that, at the time Heyward approved the loan in 2008, "Garcia had a well-documented, public record

of real estate development failures." Motion to Dismiss at 9-10.[4] In response to Heyward's

---

[4]In support of its assertion that "Garcia had a well-documented, public record of real estate development failures" the Credit Union Times cites to multiple New Mexico state and federal cases in which Garcia was a defendant, and attaches records of those cases to its Motion to Dismiss as exhibits. See Motion to Dismiss, Exhibits A-F. Rule 12(d) of the Federal Rules of Procedure provides:

**Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by

argument that Statement 3 is defamatory because it "suggest[s] that this 'lack of attention to detail' was responsible for a 'significant number of poor loans,'" Motion to Dismiss at 11 (quoting Complaint ¶ 15c, at 3), the Credit Union Times asserts that the "vague and subjective charge, like the characterization of Heyward's leadership style, requires the reader to speculate about its precise meaning," Motion to Dismiss at 11, and are thus not verifiable facts, see Motion to Dismiss at 12 (citing Associated Press v. Cook, 17 S.W.3d 447, 454 (Tex. Ct. App. 2000)).

The Credit Union Times argues that Statement 4 -- "The U.S. Attorney has indicted developers for fraud[,] but critics blame CU CEO" -- cannot properly serve as the basis of a defamation claim, because it is "not reasonably capable of bearing the defamatory implication alleged by [Heyward]." Motion to Dismiss at 12. In regard to Statement 5, the Credit Union Times contends that "[t]he gist or sting of this statement is that First Financial has a 'pattern' of 'reckless lending' like the Copper Square loan. But on its face, the Statement does not refer to plaintiff Heyward" and thus cannot form the basis of defamation claim. Motion to Dismiss at 12. The Credit

---

the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12. Where the matters outside the pleadings are matters with regard to which a court may take judicial notice -- including matters of public record -- a court's acceptance of them does not convert the motion to dismiss into a motion for summary judgment. See Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000)("We note, however, that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), abrogated on other grounds, McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001)(en banc). See also Campos v. Las Cruces Nursing Ctr., 828 F. Supp. 2d 1256, 1262 n.3 (D.N.M. 2011)(Browning, J.)(where the plaintiffs attached the New Mexico Human Resource Department's charges against them in an administrative proceeding to their motion to dismiss, the Court found that it "may rely upon those exhibits without converting th[e] motion to dismiss into a motion for summary judgment by taking judicial notice of the NMHRD's administrative record"). Because the cases against Garcia are matters of public record, the Court may rely upon the Credit Union Times' attached exhibits without converting the Motion to Dismiss into a motion for summary judgment.

Union Times asserts that, because proving that First Financial has a reckless lending history requires speculation, the statement is unverifiable and therefore cannot form the basis of a defamation claim. See Motion to Dismiss at 13.  In regard to Statement 6, the Credit Union Times contends that Heyward does not allege that the statement is defamatory as to him and that it is not: "News reports often include a statement that the subject of the report, for whatever reason, has declined to comment, and such statements are not defamatory."  Motion to Dismiss at 13-14 (citing Dodds v. Am. Broad. Co., 145 F.3d 1053, 1067 (9th Cir. 1998); Brewer v. Capital Cities/ABC, 986 S.W.2d 636, 643 (Tex. Ct. App. 1998)).

In regard to Statement 7, the Credit Union Times asserts that Heyward acknowledges as true that "he was the only First Financial officer with authorization to approve a $7 million loan, and that he did in fact approve it."  Motion to Dismiss at 14 (citing Complaint at 15g).  As to Heyward's contention that the statement is defamatory because he did not know what his subordinates at First Financial knew, the Credit Union Times argues:

> [T]he sting is the same whether he approved a large loan without learning important details from his subordinates or whether he knew those details but approved the loan anyway.  Whether by inattention to detail, misplaced reliance on his subordinates, or knowing disregard of clear red flags, Heyward is responsible for a blunder that unquestionably proved costly for First Financial.  Where as here, a libel plaintiff has admitted the truth of facts that would have the same effect on the mind of the reader as the allegedly defamatory statement, no claim for libel exists.

Motion to Dismiss at 14 (internal citations omitted)(citing Nicholson v. Promotors on Listings, 159 F.R.D. 343, 355 (D. Mass. 1994); Masson v. New Yorker Magazine, Inc., 501, U.S. 496, 517 (1991)).  The Credit Union Times contends that Statement 8 cannot serve as a basis for a claim of defamation by Heyward, because the statement is about First Financial and not about Heyward.  See Motion to Dismiss at 15.  With regard to Statement 9, the Credit Union Times asserts that "the sting of the statement . . . -- that there was a 'systematic lending pattern at First Financial 'without regard

to due diligence' -- is not susceptible to a precise meaning." Motion to Dismiss at 15 (quoting Complaint ¶ 15i, at 6). The Credit Union Times argues that, because it reports only on the arguments of Heyward's critics, and those arguments use "colloquial terms, not in the precise and parsed language of an official regulatory report," the statement is not sufficiently verifiable and therefore cannot serve as a basis for defamation. Motion to Dismiss at 15-16.

The Credit Union Times argues that Statement 10 cannot serve as the basis for a defamation claim. The Credit Union Times contends that, in addition to Heyward admitting in his Complaint that he purchased business loan participations from his previous employer, the assertion is not defamatory. See Motion to Dismiss at 16. The Credit Union Times argues that the other assertion in Statement 10 -- that "[c]ritics reported that Heyward had bought these loan participations with little or no due diligence . . . ," Complaint ¶ 15j, at 8 -- read in context, "is simply another variation on the unverifiable view of the critics that more investigation should have been conducted . . . ." Motion to Dismiss at 16-17 (citing Fikes v. Furst, 2003-NMSC-033, ¶ 18). In regard to Statement 11, the Credit Union Times states: "Plaintiff does not deny the accuracy of these figures; rather, he contends that the statement 'impl[ies]' that a decline is bad or otherwise abnormal merely because Mr. Heyward is the CEO." Motion to Dismiss at 17. The Credit Union Times asserts that, even if this interpretation were reasonable, the statement still could not constitutionally serve as a basis for a defamation claim, because "whether a decline in a financial institution's net worth is 'bad' or 'abnormal' is a subjective view, not a verifiable fact." Motion to Dismiss at 17. As to Statement 12, the Credit Union Times asserts:

> The sting of this statement -- that First Financial is "in[] a significantly deeper hole" than if someone else were CEO -- is the quintessential kind of speculation that is incapable of being proven true or false, and therefore not properly subject to a defamation claim. No one can know what condition First Financial might have been in if Heyward had not been hired as the CEO.

Motion to Dismiss at 17-18 (quoting Complaint ¶ 15l, at 9)(citing Am. Broad. Cos. v. Gill, 6 S.W.3d 19, 44 (Tex. Ct. App. 1999), disapproved of on other grounds in Turner v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000)).

On May 25, 2012, Heyward filed the Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint.  See Doc. 16 ("Response").  Heyward argues that, in the Court's review of the Motion to Dismiss, the standard of review is such that "material allegations of [the] complaint must be accepted as true; dismissal [of the Complaint] is appropriate only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Response at 2.  Heyward argues that the Credit Union Times' Motion to Dismiss is premature:

> Defendant, in its Motion to Dismiss, has separated each of the statements . . . in an attempt to show that they are not actionable; however, Defendant's Motion is premature because Defendant attempts in its Motion to argue facts of the case and get into the merits.  The Purpose of [a] motion to dismiss is to test sufficiency of [the] complaint, not to decide [the complaint's] merits.

Response at 4 (citing Moore v. Bd. of Educ. of the City of Chicago, 300 F. Supp. 2d 641 (N.D. Ill. 2004)).  Heyward contends that the Motion to Dismiss is also premature, because discovery has not yet begun.  See Response at 5 (citing Klebanow v. Funston, 35 F.R.D. 518, 520 (S.D.N.Y. 1964)).

Heyward contends that his Complaint is sufficient to withstand the Motion to Dismiss: "[I]f the allegations contained in Plaintiff's Complaint are deemed to be true, which is exactly what the well settled law with regard to reviewing a Motion to Dismiss requires, [then] Plaintiff's Complaint more than satisfies the minimal standard of pleading at this early stage in litigation."  Response at 5. Heyward argues that the Credit Union Times' "desperate argument that Defendant's  statements . . . are not factual statements that reasonably could be verified . . . ." is flawed, because the "majority of the defamatory statements . . . could in fact be verified."  Response at 6.  Heyward

asserts that the statements are not constitutionally protected opinions, because the critics' statements "are facts that can and will be proven false and incorrect and therefore not protected by the First Amendment." Response at 6.

Heyward argues that Statement 1 is false and that the "Defendant's failure to investigate the lending history during Plaintiff's tenure to validate the 'critics[']' comments before publishing them is a clear display of reckless journalism. . . . [for which the] Defendant should not be rewarded . . . ." Response at 7. Heyward argues that the Credit Union Times' reliance on <u>Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.</u>, 175 F.3d 848 (10th Cir. 1999), to support its argument that the statement is entitled to protection under the First Amendment to the United States Constitution is flawed, because Heyward "is not a public figure." Response at 8. Heyward contends that the Credit Union Times' assertions that some of the statements are constitutionally protected opinions is premature:

> Defendant cites to <u>Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs[., Inc.,</u>] to illustrate that before there can be liability in a defamation claim there must be proof the[] [statements] are false and not opinions. Again, Plaintiff would take the position that a Motion to Dismiss is not the proper forum to argue the merits of the case and these determinations should be reserved for trial.

Response at 8. Heyward asserts that, regardless whether it is true that one's management style is unverifiable, there are allegations in Statement 1 that tie his cowboy style of leadership to his failure to perform due diligence, and that Heyward can prove that he performed due diligence in connection with the Copper Square loan. <u>See</u> Response at 9.

In regards to Statement 2, Heyward argues that the statement "implies that there have been multiple individuals fired and for no other reason than they disagreed with Mr. Heyward." Response at 9-10. Heyward asserts that the statement is untrue, as only one executive left during Heyward's tenure before the article was written, and the statement is defamatory to Heyward because it has

discouraged potential employees from interviewing with him.  See Response at 10.   Heyward

contends that Statement 3 is a factual issue that cannot be decided on a motion to dismiss, but must

go to the trier of fact, stating: "Heyward did not show any lack of attention to detail for the Copper

Square loan or in any other previous loans . . . . [and thus] Defendant's Motion to dismiss [sic] is

premature and . . . . [t]his is an allegation which poses a factual situation for the trier of fact to

decide."  Response at 11.  Heyward argues that the Credit Union Times' reliance on Associated

Press v. Cook, 17 S.W.3d at 447, is misplaced, because the Court of Appeals of Texas in Associated

Press v. Cook made clear that there were too many instances of which the reader would have to

speculate, whereas in this case, the Credit Union Times could have researched and discovered the

amount of loans Heyward approved.  See Response at 12.

Heyward argues, with regard to Statement 4, that the "implications that 'might reasonably

be drawn' from" the Statement are that "the developers are not responsible for the alleged fraudulent

acts [for which the U.S. Attorney has indicted them], but rather Mr. Heyward is."  Response at 13-

14.  In response to the Credit Union Times' argument that Statement 5 does not refer to him,

Heyward asserts that this argument is disingenuous, because "throughout their Motion they state that

Ben Heyward acted unilaterally and was the only one who could authorize loans."  Response at 14.

Hayward recognizes that, under Andrews v. Stallings, 119 N.M. 478, 892 P.2d 611 (Ct. App. 1995),

defamation must be clearly directed towards the plaintiff, but contends that Statement 5 is clearly

directed towards Heyward, because "[t]he CU Times article makes it very clear that all of the critics'

allegations and the alleged pattern of reckless lending were the responsibility of Ben Heyward."

Response at 14.  Heyward asserts that Statement 6 is "inaccurate, taken out of context and

incomplete," because the questionnaire provided to Heyward did not allow him to respond to or

comment on the anonymous critics' statements.  Response at 15-16.  As to Statement 7, Heyward

-14-

contends that the Credit Union Times' reliance on Nicholson v. Promotors on Listings, 159 F.R.D. at 355, "to show that [the] statement . . . is not actionable because Mr. Heyward was responsible for a blunder that unquestionably proved costly for First Financial," is misplaced.  Response at 16. Heyward argues that Nicholson v. Promotors on Listings is not analogous to his case, because he alleges that he is not a public figure, and there was no reported falsity or inaccuracy in Nicholson v. Promotors on Listings.  However, according to Heyward, the Article's report that he had the same knowledge as his staff is untrue.  See Response at 16.  Heyward argues that Nicholson v. Promotors on Listings is also distinguishable in that the Credit Union Times' inaccuracies were malicious:

> Nicholson states that "if there is no actual malice with regard to the bulk of the assertions and with regard to the general thrust of an article, inaccuracies with regard to subsidiary matters will not support recovery." Nicholson v. Promotors on Listings, 159 F.R.D. [at] 355[]. In the instant case, there is actual malice with regard to the bulk of the assertions and with regard to the general thrust of the article. At a minimum there are factual disputes on the malice behind the allegations and therefore a Motion to Dismiss would be premature.

Response at 17.

In response to the Credit Union Times' argument that Statement 8 cannot serve as a basis for defamation as it is not about Heyward, he points out that "the sentence immediately following [S]tatement [8] is: 'Heyward has maintained that none were fired but sources familiar with the credit union said all six were fired or forced out after they raised questions about the credit union's direction.'" Response at 17.  Heyward thus contends that the "Defendant's cited case law is not applicable because the statement is about Plaintiff and is untruthful and without any factual basis," because Statement 8 is about his "false[] alleged tendency to terminate or force out employees that disagree with his operations of the credit union."  Response at 18.  In regard to the Credit Union Times' argument that Statement 9 is not actionable because "there is no precise meaning to the 'systematic lending pattern' and 'without regard to due diligence,'" Heyward argues that Greenbelt

Coop. Publ'g Ass'n v. Breslser, 398 U.S. 6 (1970) -- the case on which the Credit Union Times relies for its argument -- is distinguishable.  Response at 19.  Heyward asserts: "In Greenbelt . . . all the reported information was accurate and truthful, which is distinguishable from the instant case because the allegations in the CU Times article are inaccurate and untruthful."  Response at 19. Heyward contends that the Credit Union Times' cite to Mendoza v. Gallup Indep. Co., 764 P.2d at 492, as supporting its argument that Statement 9 considered in context cannot be interpreted as an assertion of fact, is misplaced, because Mendoza v. Gallup Indep. Co., is distinguishable on the grounds that it was a motion for summary judgment, not a motion to dismiss, and, notably, that the article in Mendoza v. Gallup Indep. Co. was published on the newspaper's opinions page.  See Response at 19.  Heyward asserts that the statements at issue in this case "do not contain language, such as 'in my opinion' or any other language to indicate to the reader that the assertions are merely opinions and not factual allegations."  Response at 20.  As to Statement 10, Heyward argues that the Credit Union Times, in its Motion to Dismiss, "attempts to create a perception that the critics were merely dissatisfied with the level of due diligence conducted prior to purchasing the business loan participations and the CU Times' article reporting this dissatisfaction is not actionable."  Response at 20.  Heyward argues, however, that, because the asserted facts in the statement that allegedly caused that dissatisfaction are false, the statement is actionable.  See Response at 20.

Heyward alleges that Statement 11 "is misleading and inaccurate . . . . [because] [w]hen read in its entire context[,] Defendant is alleging that the loss in net worth of First Financial is in large part due to Mr. Heyward without any factual evidence to back the allegation."  Response at 21.  In regard to Statement 12, Heyward argues that the Credit Union Times cannot hide behind defamatory statements, alleging that they are not facts, by couching them in terms of critics' concerns or criticisms.  See Response at 22.  Heyward states:

-16-

A plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.  We thus disapprove of the language of these court of appeals cases to the extent that they hold or suggest otherwise.  Turner v. KTRK TV, Inc., 38 S.W.3d [at] 115 . . . .  The court in Turner overruled the court in ABC, Inc. v. Gill, 6 S.W.3d [at] 44 . . . , which was cited by Defendant.  In the instant case, while CU Times acknowledges that the economy had a negative effect on Credit Unions, the manner in which the article was published indicates that any downfall of First Financial was solely because of Mr. Heyward.

       Even if an individual, or in this case critics, state the facts upon which opinions are based on, if those facts are either incorrect or incomplete, or if these assessment of them is erroneous, the statement may still imply a false assertion of fact. Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 [(1990)] . . . .  Simply couching such statements in terms of opinion does not dispel these implications. Id.  Therefore, Defendant cannot hide behind its assertion that these false statements are merely opinions when Defendant bases its "opinions" on completely untrue facts.

Response at 22.

On June 11, 2012, the Credit Union Times filed its Reply Brief in Support of Motion to Dismiss Complaint.  See Doc. 18 ("Reply").  The Credit Union Times contends that Heyward's citation to DIRECTTV, Inc. v. Cope, 301 F. Supp. 2d 1303 (M.D. Ala. 2003), for the proposition that the threshold is exceedingly low to survive a motion to dismiss, "ignor[es] the stricter standard applied to complaints in disfavored causes of action such as defamation." Reply ¶ 1, at 1-2.  The Credit Union Times argues that Heyward misunderstands its Motion to Dismiss, asserting: "[D]efendant does not contest the sufficiency of plaintiff's pleading but, rather, contends that under the First Amendment and applicable common law, the statements challenged by plaintiff cannot properly give rise to a claim for defamation." Reply ¶ 2, at 2 (citing Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. 1377 (D.N.M. 1997),  aff'd sub nom., Schuler v. McGraw Hill Cos., Inc.,145 F.3d 1346 (10th Cir. 1998)).

In response to Heyward's argument in connection with Statement 1 that his due diligence

in commercial loans can be proven, the Credit Union Times asserts that, "even by his own account, what is at issue is whether he performed 'the appropriate due diligence' or 'proper due diligence,' -- standards that are clearly evaluative and subjective, not quantitative or otherwise capable of objective verification."  Reply ¶4, at 2-3 (emphasis omitted).  The Credit Union Times disagrees with Heyward's contention that Statement 2 is defamatory as it implies that "unless you agree with Plaintiff you will be fired," Reply ¶ 5, at 3 (quoting Response at 10), arguing that such an implication cannot reasonably be drawn from statement 2, see Reply ¶ 5, at 3.  Similarly, where Heyward contends that Statement 4 implies that he was guilty of fraudulent activity, the Credit Union Times asserts that, in the context of the article referring to the loan as a "mistake," the only reasonable implication is that Heyward is sloppy, and not criminal.  Reply ¶ 6, at 3.  In response to Heyward's criticism of the Credit Union Times' citation to Nicholson v. Promotors on Listings, 159 F.R.D. at 355, the Credit Union Times clarifies that it cites to Nicholson v. Promotors on Listings "for the well-settled principle that it is the 'gist' or 'sting' of a statement that must be false for it to give rise to a claim for defamation."  Reply ¶ 7, 3-4 (quoting Nicholson v. Promotors on Listings, 159 F.R.D. at 355).  The Credit Union Times argues that Statement 9, although it does not contain any language such as "in my opinion," can still classify as unverifiable opinion that the Constitution protects, because the Supreme Court of the United States has made clear that "the distinction between actionable facts and protected opinion does not depend on the use of phrases such as 'in my opinion.'"  Reply ¶ 8, at 4 (quoting Milkovich v. Lorain Journal Co., 497 U.S. at 19).  As to Statement 12, the Credit Union Times asserts that Heyward's contention that it implies that "any downfall . . . was solely caused because of Mr. Heyward," Reply ¶ 9, at 4 (quoting Response at 22), is not reasonable in the context of the article, Reply ¶ 9, at 4.  The Credit Union Times contends that Heyward's reliance on Turner v. KTRK TV, Inc., 38 S.W.3d at 13, is unpersuasive, because

Heyward fails to "explain how <u>Turner</u> might apply, and it does not, as there are no omitted or juxtaposed facts here that in any manner suggest that the . . . financial problems were 'solely because of Mr. Heyward.'" Reply ¶ 9, at 5.  The Credit Union Times thus requests that the Court dismiss Heyward's claims with prejudice.  <u>See</u> Reply at 5.

     At the hearing on the Credit Union Times' Motion to Dismiss, the Credit Union Times asserted that Heyward's "principal response to [the Motion to Dismiss] seems to be that it's premature, that issues are not ripe for decision by the Court at . . . this stage."  Transcript of Hearing (taken July 27, 2012) at 7:8-10 (Koch)("Tr.").[5]  The Credit Union Times noted that Heyward's argument appears to be that, because Heyward has pleaded all the elements for defamation, he has sufficiently stated a claim under rule 8(a) of the Federal Rules of Civil Procedure.  <u>See</u> Tr. at 7:10-12 (Koch).  The Credit Union Times made clear that it is "not contesting the sufficiency of allegations in the Complaint as you would in a [<u>Bell Atl. Corp. v. ]Twombly</u>[, 550 U.S. 544 (2007),] context, but, rather our motion is more in the nature of a motion for judgment on the pleadings."  Tr. at 7:13-16 (Koch).  The Credit Union Times contended that, unlike most torts, libel is disfavored by courts and should be dismissed at the earliest possible opportunity.  <u>See</u> Tr. 7:17-20 (Koch).  The Credit Union Times argued that the Motion to Dismiss is not premature, because "[e]ach of the legal bases . . . rel[ied] upon are issues that are to be determined . . . as a matter of law . . . ."  Tr. at 7:21-23 (Koch).

     The Credit Union Times argued that Statement 1 cannot serve as the basis of a defamation allegation, because "no one can prove whether Mr. Heyward . . . has a cowboy style of leadership, that's not something that's verifiable as true or false . . . ."  Tr. at 9:19-22 (Koch).  In response to

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

the Court's inquiry how one would verify that Heyward has a cowboy style of leadership, Heyward contended that one can verify that Heyward has performed his job as CEO of First Financial with due diligence, that performance is verified by monthly reports of the First Financial Board of Directors, and that the federal regulators overseeing the credit union have never made negative findings regarding Heyward.  See Tr. at 12:1-24 (Court, Danoff).  Heyward asserted that he can verify that he has performed with due diligence by showing that he has met all of the regulators' requirements, and that, under federal regulators' scrutiny, the credit union's financial safety has never been questioned.  See Tr. at 13:14-14:1 (Danoff).  The Court asked the Credit Union Times whether the assertion that the "critics lay the responsibility for making the Copper Avenue loan at the feet of Heyward" could be verified.  Tr. at 16:12-16 (Court).  The Credit Union Times responded that it could, but that: (i) Heyward is not challenging the content of what the critics say as true, and (ii) were Heyward to challenge the content, whether critics blame Heyward for the loan is not defamatory to Heyward.  See Tr. at 16: 19-25 (Koch).  The Credit Union Times argued that Heyward's contention that Statement 1 implies that First Financial is in financial jeopardy because of Heyward's management is not reasonable in the context of the Article, as the Article does not suggest or support an inference that First Financial is in jeopardy.  Rather, the Article states that critics view Heyward's leadership style -- what they allege is his desire to make a big splash rather than perform due diligence -- as jeopardizing First Financial's safety.  See Tr. at 17:10-18:2 (Koch).

Moving to Statement 2, the Court asked Heyward, even assuming that Statement 2 is false, whether it is defamatory.  See Tr. at 19:6-9 (Court).  Heyward responded that Statement 2 implies that he "arbitrarily and capriciously" fires his subordinates, which damages his reputation.  Tr. at 19:10-17 (Danoff). The Court then inquired, while Statement 2 may not be flattering, whether it rises to the level of subjecting Heyward to "contempt or ridicule," as New Mexico law requires for a

defamatory statement. Tr. at 19:18-22 (Court). Heyward replied that it "absolutely" does, because Heyward would be ridiculed for not having an open mind and "be contemptuous of something that's not even true about his character." Tr. at 20:1-9 (Danoff). Heyward argued that no credible person would want to associate with him after reading Statement 2, and, Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. at 1377, concluded that was a sufficient standard to find that a statement was defamatory. See Tr. at 20:16-21:8 (Danoff).

In regard to Statement 3, the Credit Union Times argued that the statement is true, as Heyward concedes he had sole authority to sign off the loan, and thus authorize the loan and that, to the extent that the statement goes beyond that assertion, the statement is not defamatory of Heyward. See Tr. at 22:12-25 (Koch). The Credit Union Times contended that the critics' charge that Heyward suffered from a lack of attention to detail is a generalized statement not provable as true or false. See Tr. at 22:25-23:3 (Koch). The Credit Union Times asserted that, under New Mexico law, the issue is whether the "gist" of the statement is true or false, and the gist of Statement 3 -- that Heyward had the sole authority to authorize the Copper Square loan, that the Copper Square loan was a costly decision, and that there was a lack of attention to detail in Heyward's authorization of it -- is substantially true. See Tr. at 23:7-24:15 (Koch). The Court asked Heyward whether he disagrees that he has conceded what the Credit Union Times classifies as Statement 3's gist. See Tr. at 24:21-23 (Court). Heyward responded that he does not concede that the decision to make the loan was unilateral, because there are policies and procedures in place which he must follow in making the loan, and there is a committee which makes recommendations on whether to make the loan. See Tr. at 25:3-10 (Danoff). Heyward stated that he has data to prove that he was attentive to details in making the Copper Square loan. See Tr. at 25:10-20 (Danoff). The Court inquired how, if Heyward contends that he was attentive to the details in making the Copper Square loan, Heyward

reconciles that contention with his contention as to Statement 7, that he was not privy to the same information regarding Garcia as was his staff.  See Tr. at 26:21-27:1 (Court).  Heyward contended that, although he concedes that he did not have the information that his employees had at the time he made the loan, the lack of this particular information does not mean that he was inattentive to the details of making the loan, because the Court and the law cannot require Heyward to be omniscient. See Tr. at 27:2-28:10 (Danoff).

The Credit Union Times, in regard to Statement 4, argued that Heyward's contention that it is defamatory for the Credit Union Times to have juxtaposed the United States Attorney's indictment of Garcia with the critics' blame of Heyward for the loan, because it implies that Heyward acted criminally, is not persuasive.  See Tr. at 28:18-25 (Koch).  The Credit Union Times contended that "it's very clear that what the critics are charging is that Mr. Heyward paid insufficient attention to detail, not that he did anything illegal."  Tr. at 29:14-19 (Koch).  The Court broke the statement down into its parts, and asked Heyward first whether he disputes that the United States Attorney indicted the developers, including Garcia, in connection with the loan.  See Tr. at 30:23-24 (Court).  Heyward responded that he does not disagree with that statement.  See Tr. at 30:25 (Danoff).  The Court then asked whether Heyward is disputing that the critics blame him as First Financial's CEO.  See Tr. at 30:25-31:1 (Court).  Heyward responded that, in light of the context of the Article, and in a light most favorable to Heyward, the statement implies that the critics blame Heyward for fraud, which Heyward does not concede and asserts is defamatory.  See Tr. at 31:2-13 (Danoff, Court).  The Court asked, reading the statement in that light, whether Heyward disputes that the critics blame him for approving the loan.  See Tr. at 31:14-18 (Court, Danoff). Heyward responded that he objects that he does not know who the alleged critics are, and he has not been provided with any of the requested information identifying these critics, and thus he cannot say

whether he disputes the allegations when he does not know of whom the critics consist.  See Tr. at 31:19-32:8 (Court, Danoff).  The Court asked if it was only this particular reading, with the implication that the critics are blaming Heyward for fraud, rather than for approving of the loan, that Heyward is alleging is defamatory.  See Tr. at 32:9-13 (Court).  Heyward conceded that the Court is correct; it is under that implication only that is he contending that the statement is defamatory, but he contended that the case law allows for defamation by implication where there is "reputational injury caused by communication . . . result[ing] from not what is said but from what is implied. And this clearly implies . . . [that] Heyward . . . is responsible for fraud."  Tr. at 32:19-25 (Danoff). Heyward asserted that "to link [the critics' blame of Heyward] in the same sentence . . . [with] fraud to me is very clear that they're . . . blaming Mr. Heyward for a fraud and it's all his fault."  Tr. at 33:8-10 (Danoff).  The Credit Union Times responded by arguing that the phrase "critics blame CU CEO" must be construed in the context of the whole Article, which discusses the critics' blame of Heyward for approving of a bad loan and not performing his job with due care; the Article is not about Garcia's indictment for fraud.  See Tr. at 34:15-35:16 (Koch).

The Credit Union Times asserted that Statement 5's "language . . . particularly in the context[,] is not specific enough to form a factual statement that can be the basis of a libel suit."  Tr. at 37:13-15 (Koch).  The Credit Union Times stated that the context is a statement in an "article that's reporting about subjective criticisms of Mr. Heyward and of the fact that . . . the credit union is not being run in a way that they would like to see; that they believe that [it's part of] a pattern [of loans] . . . that aren't getting sufficient . . . attention to the details."  Tr. at 37:22-38:5 (Koch).  The Court inquired: "Well can a publisher escape a defamation suit by simply putting the words 'critics charge' [in front of] whatever they want to say?"  Tr. at 38:23-25 (Court).  The Credit Union Times responded that a publisher cannot so easily escape defamation liability.  See Tr. at 39:1 (Koch).  The

Credit Union Times asserted, however, that "[i]t's not that the publisher is not responsible because they're just citing to critics; its that the fact that it's . . . a report about the beliefs of other people who were unhappy."  Tr. at 39:8-11 (Koch).  Heyward responded that Statement 5 is particularly concerning, and particularly defamatory, because of the term "reckless."  Tr. at 39:19-21 (Danoff).  Heyward asserted: "Reckless[ness] is a direct professional accusation."  Tr. at 40:1 (Danoff).  Heyward stated that he can "factually prove that there has not been reckless lending."  Tr. at 40:5-6 (Danoff).  The Credit Union Times responded that, if this were a federal regulator's report, rather than an article relating people's opinions, a charge of recklessness may be actionable, but this Article could not reasonably be read to imply that the charge of recklessness is asserting fact.  See Tr. at 40:20-41:7 (Koch).

In regard to Statement 6, the Court inquired whether the reporter talked to Heyward before publishing the article.  See Tr. at 41:15-16 (Court).  The Credit Union Times replied that, although not part of the facts on which the Motion to Dismiss is based, the reporter submitted questions to Heyward, but received only a short electronic mail transmission reply from Heyward, which the Article quoted.  See Tr. at 41:15-21 (Koch).  The Credit Union Times asserted: "[T]here is nothing defamatory about a subject of a story not answering detailed questions, not being willing to respond at all, to not provide comment, to do anything that he or she wishes in response to a story."  Tr. at 42:20-23 (Koch).  The Court asked whether the quotation in the Article is from the electronic mail transmission that Heyward sent to the reporter, to which the Credit Union Times responded that it was, and that the contents of the entire electronic mail transmission appears in the Article.  See Tr. at 43:10-23 (Court, Koch).  In response to the Court's inquiry of Heyward what he found defamatory about Statement 6, Heyward responded that a reasonable person would infer from the statement that he is obfuscating his duties by not answering questions and, rather than merely not wanting to

answer the questions, is attempting to avoid the questions altogether.  See Tr. at 43:24-44:15 (Court, Danoff).  The Credit Union Times asserted that, "just because a reader might have questions about why the subject of a story did not provide answers to . . . questions doesn't . . . rise to the level of defamation . . . ."  Tr. at 44:17-20 (Koch).

The Credit Union Times moved to dismiss the Complaint to the extent that it is based on Statement 11, arguing that Heyward does not contest the numbers reported that reflect First Financial's financial condition, and that any implication of the statement that the decline is abnormal or worse than it would have been without Heyward, cannot form the basis of a defamation claim, as it is not verifiable.  See Tr. at 46:11-19 (Koch).  Similarly, with regard to Statement 12, the Credit Union Times contended that whether Heyward led First Financial into "a significantly deeper hole than it would have been if Heyward was not CEO . . . . cannot be proven true or false."  Tr. at 47:5-15 (Koch).  The Court asked Heyward how he or anyone would prove as true or false that First Financial would be in a deeper, or less-deep, hole had Heyward not been its CEO.  See Tr. at 47:24-48:1 (Court).  Heyward responded that it can be proved true or false by comparing how First Financial has performed with Heyward as CEO compared with how other credit unions performed over the same period.  See Tr. at 48:8-10 (Danoff).  Heyward argued that Statement 12 goes beyond asserting that First Financial would have performed better had he not been there and, when read in context of the whole Article, is "assailing his management."  Tr. at 48:12-16 (Danoff).  Heyward contended that such a comparison would not be speculative, because "there are industry performance periodicals and publications that will depict whether he put this in a deep[er] hole or not."  Tr. at 50:23-51:1 (Danoff).

Heyward then argued that Statement 9 is "the most important one," because it implies that the Copper Square loan was the capstone to what has been a systematic practice of Heyward making

terrible loans, of which Heyward stated that he could "think of nothing that is more contemptuous." Tr. at 51:23-52:8 (Danoff). Heyward asserted that this statement implies that almost everything he does is part of a system of poor loans, including the business loan participations, and that he does not perform due diligence anywhere within this system. Heyward contended that this implication is defamatory as to him. <u>See</u> Tr. at 52: 15-1 (Danoff). Heyward argued that the statements are, and the Article viewed in its entirety is, defamatory, because it says that "[h]e's a bad manager, he's a hatchet machine, he doesn't do due diligence, he systematically does bad loans, he was ultimately responsible for the fraud of the developers with regards to matters that people [have been] indicted for, and that he just doesn't do his job." Tr. at 54:1-6 (Danoff). Heyward asserted that this Article and these statements have "hurt him immensely through the industry and people in the industry have and will continue to call him about this." Tr. at 54:22-25 (Danoff). Heyward concluded by stating that "[h]e's not a reckless lender. He's a reasonable, sincere lender." Tr. at 55:6-7 (Danoff).

### <u>LAW REGARDING RULE (12)(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir.

2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line

from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## LAW REGARDING DEFAMATION

More than forty years ago, in New York Times v. Sullivan, 376 U.S. 254 (1964), the Supreme Court of the United States declared that state-law defamation claims must be measured by standards that satisfy the First Amendment, which permits no law "abridg[ing] the freedom of speech, and of the press."  376 U.S. at 269.  That holding is grounded in "a profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  376 U.S. at 270.  The protection of speech on issues of public concern extends even to false speech, so that the First Amendment's "freedom of expression . . . ha[s] the 'breathing space'" it needs to survive. 376 U.S. at 271-72.  See Gertz v. Robert Welch, Inc., 418 U.S. at 341 ("The First Amendment requires that we protect some falsehood in order to protect speech that matters.").

Under New Mexico law, a prima-facie case of the tort of defamation includes: (i) a published communication by the defendant; (ii) the communication includes an asserted statement of fact; (iii) the communication was concerning the plaintiff; (iv) the statement of fact is false; (v) the communication was defamatory; (vi) the persons receiving the communication understood it to be defamatory; (vii) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (viii) the communication caused actual injury to the plaintiff's reputation; and (ix) the defendant abused its privilege to publish the communication. See Civ. U.J.I.

13-1002(B) N.M.R.A.[6]  See also Newberry v. Allied Stores, Inc., 108 N.M. 424, 429, 773 P.2d 1231,

1236 (1989)("Generally, the elements of a defamation action include: a defamatory communication,

published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and

proximately causing actual injury to the plaintiff.")(citing Civ. U.J.I. 13-1002 N.M.R.A. (1986)).

    **1.**    **Statement of Fact.**

The Supreme Court of the United States has held that, under the First Amendment to the

United States Constitution, a statement can serve as a basis for a defamation claim only if it is a

statement of fact and not of opinion:

> Under the First Amendment there is no such thing as a false idea. However
> pernicious an opinion may seem, we depend for its correction not on the conscience
> of judges and juries but on the competition of other ideas.  But there is no
> constitutional value in false statements of fact. Neither the intentional lie nor the
> careless error materially advances society's interest in "uninhibited, robust, and
> wide-open" debate on public issues. New York Times Co. v. Sullivan, 376 U.S., at
> 270 . . . . They belong to that category of utterances which "are no essential part of
> any exposition of ideas, and are of such slight social value as a step to truth that any
> benefit that may be derived from them is clearly outweighed by the social interest
> in order and morality."  Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942).

Gertz v. Robert Welch, Inc., 418 U.S. at 339-40.  Thus, "[a]n action for defamation lies only for

false statements of fact and not for statements of opinion."  Mendoza v. Gallup Indep. Co., 107 N.M.

721, 723, 764 P.2d 492, 494 (Ct. App. 1988).  The Supreme Court of New Mexico, in Marchiondo

v. Brown, 98 N.M. 394, 649 P.2d 462 (1982), held that the court is to determine as a matter of law

whether the alleged defamatory statement was or contained a statement of fact:

> Where the statements are unambiguously fact or opinion, . . . the court
> determines as a matter of law whether the statements are fact or opinion.  However,

---

[6]The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by
standing committees of the Court establishes a presumption that the instructions are correct
statements of law. See State of New Mexico v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178
(1994).

> where the alleged defamatory remarks could be determined either as fact or opinion, and the court cannot say as a matter of law that the statements were not understood as fact, there is a triable issue of fact for the jury.

Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472.

Whether a statement asserts a fact turns on whether the statement is verifiable -- whether it "is sufficiently factual to be susceptible of being proved true or false." Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990). See Moore v. Sun Publ'g Corp., 118 N.M. 375, 382, 881 P.2d 375, 382 (Ct. App. 1994)("New Mexico appears to be among the states requiring verifiability as the controlling element in determining whether a statement is fact or opinion. Under this analysis, opinions are statements which cannot be proved or disproved.")(internal citations and quotations omitted).  Opinions may be actionable as defamatory where they implicitly contain an assertion of fact.  See Schwartz v. Am. Coll. of Emergency Physicians, 215 F.3d 1140, 1145 (10th Cir. 2000)("Certain expressions of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim.")(citing Milkovich v. Lorain Journal Co., 497 U.S. at 18-19).  The Supreme Court of the United States has recognized that simply couching statements in terms of an opinion does not dispel its implications of a false assertion of fact.  See Milkovich v. Lorain Journal Co., 497 U.S. at 19 ("It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'")(quoting Cianci v. New Times Publ'g Co., 639 F.2d 54, 64 (2d Cir. 1980)(Friendly, J.)(internal alterations omitted)).

The Supreme Court of New Mexico, in Marchiondo v. Brown, provided guidance on how to distinguish between fact and opinion: "[T]he crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of

existing fact." 98 N.M. at 404, 649 P.2d at 472. This determination must be made by considering

the statement in context of the entirety of the publication. Mendoza v. Gallup Indep. Co., 107 N.M.

at 723, 764 P.2d at 494 ("In resolving the distinction between fact and opinion, the trial court should

consider . . . the entirety of the publication . . . .  In considering the 'entirety' requirement, the

published statement must be read in context."). The Supreme Court of New Mexico has illustrated

how a court should evaluate whether the ordinary person may understand the expression to imply

a statement of fact:

> In Kutz v. Independent Pub. Co., Inc., 97 N.M. 243, 638 P.2d 1088 (Ct.
> App.1981), the court set out the criteria for determining as a matter of law, when a
> statement may be said to be opinion or fact.  "[I]f the material as a whole contains
> full disclosure of the facts upon which the publisher's opinion is based and which
> permits the reader to reach his own opinion, the court in most instances will be
> required to hold that it is a statement of opinion, and absolutely privileged." Id. at
> 245, 638 P.2d at 1090 (citation omitted).  Conversely, where there are implications
> in the statement "that the writer has private, underlying knowledge to substantiate
> his comments about plaintiff," and such knowledge implies the existence of
> defamatory facts, the statement is deemed to be factual and not privileged. Id. at
> 246, 638 P.2d at 1091.

Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472.  Accord Mendoza v. Gallup Indep. Co., 107

N.M. at 724, 764 P.2d at 495 ("[I]f the material, as a whole, fully discloses the facts upon which the

opinion is based and permits the reader to reach [the reader's] own opinion, the statement is

generally an opinion rather than an assertion of fact, and is absolutely protected.").

### 2.    Statement Concerning the Plaintiff.

"The communication is concerning the plaintiff if the person to whom it was communicated

reasonably understood that it was intended to refer to the plaintiff." Schuler v. McGraw-Hill Cos.,

Inc., 989 F. Supp. 1377, 1384 (D.N.M. 1997)(Campos, J.)(quoting Civ. U.J.I. 13-1005 N.M.R.A.).

"There must be evidence showing that the attack was read as specifically directed at the plaintiff."

Rosenblatt v. Baer, 383 U.S. 75, 81 (1966).  In New York Times Co. v. Sullivan, the Supreme Court

held that the alleged defamatory advertisement could not reasonably be read to be "of and concerning" the plaintiff, the police commissioner, because "[t]here was no reference to respondent in the advertisement, by name or official position." 376 U.S. at 288.  The Supreme Court noted that the advertisement contained two assertions concerning police and police functions, but noted: "Although the statements may be taken as referring to the police, they did not on their face make even an oblique reference to respondent as an individual."  376 U.S. at 289.  The Supreme Court concluded: "[D]espite the ingenuity of the arguments which would attach the significance to the word 'They,' it is plain that these statements could not reasonably be read as accusing respondent of personal involvement in the acts in question."  376 U.S. at 288-89.

If a defendant publishes a defamatory communication concerning a group of persons, the defendant may be liable to an individual member if the context of the publication reasonably gives rise to the inference that the article is referencing the individual member.  See Restatement (Second) of Torts § 564A ("One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if, . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.").[7]  The Court of Appeals of New Mexico has recognized:

> No action lies for publication of defamatory words concerning a group or class of persons unless the group or class is so small that the matter can reasonably be understood to refer to the plaintiff, or unless the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

---

[7]The New Mexico courts often look to the law as stated in the Restatement (Second) of Torts for guidance on tort law.  See Schmitz v. Smentowski, 109 N.M. 386, 393, 785 P.2d 726, 736 (1990)("We have . . . been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas.");  Montanez v. Cass, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct. App.1975)("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d.").

Saenz v. Morris, 106 N.M. 530, 533, 746 P.2d 159, 162 (Ct. App. 1987)(citing Restatement

(Second) Torts § 564A (1977); Poorbaugh v. Mulllen, 99 N.M. 11, 653 P.2d 511 (Ct. App. 1982)).

Where the group is a government entity, however, there is presumption that the statement refers only

to the government, and not to any particular individual or government officer.  See Andrews v.

Stallings, 119 N.M. 478, 484, 892 P.2d 611, 617 (Ct. App. 1995)("In a close case on the issue of

whether defamatory speech is 'of and concerning' an individual or the government itself, it should

be construed as of and concerning the government.")(quoting Rodney A. Smolla, Law of

Defamation § 2.28[3], at 2-99 (1994)).

### 3.       The Asserted Statement of Fact was False.

To support a claim for defamation, the asserted statement of fact must be false in a material

way; insignificant inaccuracies are insufficient.  See Civ. U.J.I. 13-1006 N.M.R.A. ("To support a

claim for defamation, the communication must be false.  One or more statements of fact in the

communication must be false in a material way. Insignificant inaccuracies of expression are not

sufficient.").   In Franklin v. Blank, 86 N.M. 585, 525 P.2d 945 (Ct. App. 1974), the Court of

Appeals of New Mexico announced the converse of this rule, holding that a statement is not

defamatory if it is substantially true: "It is not necessary to prove the literal truth of statements made.

Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance,

and it is sufficient to show that the imputation is substantially true."  86 N.M. at 588, 525 P.2d at

948 (quoting Saleeby v. Free Press, 197 Va. 761, 763, 91 S.E.2d 405, 407 (1956)).  See Restatement

(Second) of Torts § 581A, cmt. f ("Slight inaccuracies of expression are immaterial provided that

the defamatory charge is true in substance.").  The Supreme Court of the United States has provided

guidance on when a statement is substantially true:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the
> sting, of the libelous charge [is] justified.  Put another way, the statement is not
> considered false unless it would have a different effect on the mind of the reader
> from that which the pleaded truth would have produced.

Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991)(internal quotations and

citations omitted).

### 4.    **The Communication was Defamatory.**

A statement is not defamatory because it is merely unflattering of the plaintiff.  See Robert

D. Sack, Sack on Defamation: Libel, Slander and Related Problems § 2.4.1 (4th ed. 2011)("There

is common agreement that a communication that is merely unflattering, annoying, irksome, or

embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable.").  A defamatory

communication is a communication that tends to expose the plaintiff to contempt, to harm the

plaintiff's reputation, or to discourage others from associating or dealing with the plaintiff.  See Civ.

U.J.I. 13-1007 N.M.R.A.; Marchiondo v. New Mexico State Tribune Co., 98 N.M. 282, 287, 648

P.2d 321, 326 (Ct. App. 1981)("Any false and malicious writing published of another is libelous .

. . when its tendency is to render him contemptible or ridiculous in public estimation, or expose him

to public hatred or contempt, or hinder virtuous men from associating with him.")(quoting Colbert

v. Journal Publ'g Co., 19 N.M. 156, 142 P. 146 (1914)), reversed on other grounds, Marchiondo v.

Brown, 98 N.M. 394, 649 P.2d 462 (1982).  Statements that are not defamatory in their "plain and

obvious meaning" may still be actionable for defamation where they are "susceptible of two

reasonable interpretations, one of which is defamatory and another which is innocent, or . . . are not

on their face defamatory, but which may become so when considered in connection with innuendos

and explanatory circumstances."  Marchiondo v. New Mexico State Tribune Co., 98 N.M. at 288,

648 P.2d at 327.  See Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 ("New Mexico

cases support recognizing an action for defamation based on implication.").   "The theory of defamation by implication recognizes that the reputational injury caused by a communication may result not from what is said but from what is implied."   Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741. The Court of Appeals of New Mexico endorsed a test for defamation by implication that the United States Court of Appeals for the District of Columbia put forth:

> [T]he court must first examine what defamatory inferences might reasonably be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference. We emphasize that the tortious element is provided by the affirmative conduct of the author or broadcaster, although it is immaterial for purposes of finding defamatory meaning whether the author or broadcaster actually intends or endorses the defamatory inference.

Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 (quoting White v. Fraternal Order of Police, 909 F.2d  512, 520 (D.C. Cir. 1990)).   In determining whether a statement may be defamatory by implication, the statement must be analyzed in context, in both the "immediate context . . . [and] the broader social context into which the statement fits."   Fikes v. Furst, 2003-NMSC-033, ¶ 18, 134 N.M. 602, 81 P.3d 545.

In Moore v. Sun Publ'g Corp., where the plaintiff contended that a publication defamed him, because the publication described a "disagreement over policy, rather than making any particular, direct statement about [the plaintiff's] fitness," the Court of Appeals of New Mexico concluded that its plain and obvious meaning was not defamatory.  118 N.M. at 380, 881 P.2d at 740.  The Court of Appeals of New Mexico noted that facts that the plaintiff argued defamed him were "not explicitly stated in the notice."  118 N.M. at 380, 881 P.2d at 740.  The Court of Appeals of New Mexico held, however, that, although the plain and obvious meaning is not defamatory, the statements in the notice were nonetheless defamatory, because they went beyond the essential facts,

and included unnecessary facts intended to cause the readers to draw a defamatory inference about the plaintiff. <u>See</u> 118 N.M. at 381, 881 P.2d at 741 ("Readers of the notice might have drawn a defamatory inference . . . . [because] [i]n providing further explanation in the June 7 notice, Defendants probably hoped to encourage the readers to attribute fault to [the plaintiff] rather than current management.").

## <u>ANALYSIS</u>

Heyward complains that twelve statements within the Article defamed him. The Credit Union Times argues that, as a matter of law, all twelve of the statements fail to meet one of the necessary factors to state a prima facie claim of defamation, and the Court should thus grant the Motion to Dismiss based on the pleadings. Because the Credit Union Times is asserting that, even taking all the facts alleged as true, Heyward cannot state a valid legal claim for defamation, the Motion to Dismiss is not premature. The Court concludes that Statements 1, 2, 4, 6, 7, 8, 11, and 12 fail, as a matter of law, to state a prima-facie claim for defamation, because: (i) Statements 1, 8, and 12 are unambiguously opinion and do not imply a factual assertion; (ii) Statements 2, 4, and 6 are not defamatory of Heyward; and (iii) Statements 7 and 11 are not false in a material way. At the motion to dismiss stage, however, Statements 3, 5, 9, and 10 are not unambiguously opinion, but rather could imply undisclosed defamatory facts, and thus the Court cannot soundly conclude that these Statements as Heyward pleads them fail as a matter of law to state a prima-facie case for defamation.

## I.     <u>THE CREDIT UNION TIMES' MOTION TO DISMISS IS NOT PREMATURE.</u>

Heyward argues that the Credit Union Times' Motion to Dismiss is premature, because the Credit Union Times "attempts . . . to argue facts of the case and get into the merits. The purpose of [a] motion to dismiss is to test the sufficiency of a complaint not to decide its merits." Response at

4.  A court may dismiss a complaint or portion thereof if it determines that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of his alleged facts, he has no legal claim." Marrero v. Modern Maint. Bldg. Servs., Inc., 318 F. Supp. 2d 721, 723 (E.D. Wisc. 2004)(citing Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir.1999)).  Whether a claim is sufficient to overcome a rule 12(b)(6) motion to dismiss is thus a matter of law.  The Credit Union Times does not argue the merits of the case: it does not argue that any of Heyward's allegations are false or put forth additional information to contradict Heyward's allegations.  Rather, the Credit Union Times' Motion to Dismiss asserts that all twelve of the alleged defamatory statements, even if taken as true and construed with all reasonable inferences in Heyward's favor, cannot state a claim to relief for the tort of defamation, because they each fail to meet at least one of the nine elements of a prima-facie claim of defamation. See Reply ¶ 2, at 2.  In other words, the Credit Union Times argues not that Heyward has pleaded insufficient facts, but that even accepting all of his alleged facts, he has no legal claim for defamation. See Marrero v. Modern Maintenance Bldg. Servs., Inc., 318 F. Supp. 2d at723 ("The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of his alleged facts, he has no legal claim.").  The Credit Union Times' Motion to Dismiss is thus not premature.

## II.   VIEWING HEYWARD'S ALLEGATIONS IN THE LIGHT MOST FAVORABLE TO HIM, AND DRAWING ALL REASONABLE INFERENCES IN HIS FAVOR, SOME OF THE CREDIT UNION TIMES' STATEMENTS MAY BE ACTIONABLE AS DEFAMATION AND SOME MAY NOT.

Under New Mexico law, a prima-facie case of the tort of defamation includes: (i) a published communication by the defendant; (ii) the communication includes an asserted statement

of fact; (iii) the communication was concerning the plaintiff; (iv) the statement of fact is false; (v) the communication was defamatory; (vi) the persons receiving the communication understood it to be defamatory; (vii) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (viii) the communication caused actual injury to the plaintiff's reputation; and (ix) the defendant abused its privilege to publish the communication. See Civ. U.J.I. 13-1002(B) N.M.R.A.  The Credit Union Times' Motion to Dismiss does not argue that Heyward has failed to sufficiently plead a cause of action for defamation; the Credit Union Times does not contend that Heyward failed to sufficiently plead facts from which a reasonable person could draw an inference of plausibility.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322 ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.").  The Credit Union Times' Motion to Dismiss argues, rather, "that under the First Amendment and applicable common law, the statements challenged by plaintiff cannot properly give rise to a defamation claim." Reply at 2.  See Tr. at 7:13-16 (Koch)("Our motion is more in the nature of a motion for judgment on the pleadings").  The Credit Union Times contends that each of the twelve statement fails to state a claim for defamation as a matter of law based on one or more of the following factors: (i) the statements are not factual assertions; (ii) the statements are not defamatory on their face; (iii) the statements are not defamatory by implication; and (iv) the statements are substantially true.  See Motion to Dismiss at 4 ("None of the statements . . . [are] actionable as defamation, because they are either incapable of being proven true or false, are not damaging to Heyward's reputation, are not reasonably capable of conveying the alleged defamatory meaning, or do not carry a more defamatory 'sting' than the pleaded truth").

A.     STATEMENT 1 --

**BUT CRITICS LAY THE RESPONSIBILITY FOR MAKING THE COPPER AVENUE LOAN AT THE FEET OF CEO ROBERT HEYWARD, ALLEGING THAT THE LOAN MERELY REPRESENTED THE LARGEST EXAMPLE OF A 'COWBOY STYLE' OF LEADERSHIP THAT, THEY CHARGED DEPENDED MORE ON HEYWARD'S DESIRE TO SHOW OFF AND MAKE A BIG SPLASH THAN ON DUE DILIGENCE AND RESPONSIBILITY THAT SHOULD CHARACTERIZE A SAFELY RUN CREDIT UNION**

**-- IS AN OPINION NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT SUSCEPTIBLE OF BEING PROVED TRUE OR FALSE.**

Heyward complains that Statement 1 "is false and inaccurate as well as defames the reputation of Mr. Heyward."  Complaint ¶ 15a, at 3.  The Credit Union Times argues that Statement 1 cannot serve as a basis for a defamation claim, because whether Heyward had a cowboy style of leadership cannot be proved true or false.  The Supreme Court of New Mexico allows a court to determine that a statement is fact or opinion as a matter of law only "[w]here the statements are unambiguously fact or opinion . . . ."  Marchiondo v. Brown, 98 N.M. 404, 649 P.2d at 472.  At the rule 12(b)(6)-motion-to-dismiss stage, the Court must accept as true all well-pleaded factual allegations in Heyward's Complaint, view those allegations in the light most favorable to Heyward, and draw all reasonable inferences in his favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  The Court may thus find that the statements are not actionable as factual assertions at the motion to dismiss stage only if, when well-pleaded allegations are taken as true, and construed in a light most favorable to Heyward, and drawing all inferences about the statements in his favor, the Court concludes that the statements are unambiguously opinion.

Whether a statement asserts a fact turns on whether the statement is verifiable -- whether it "is sufficiently factual to be susceptible of being proved true or false."  Milkovich v. Lorain Journal Co., 497 U.S. at 21.  See Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 382 ("New

Mexico appears to be among the states requiring verifiability as the controlling element in determining whether a statement is fact or opinion. Under this analysis, opinions are statements which cannot be proved or disproved.")(internal citations and quotations omitted).  Opinions may be actionable as defamatory where they implicitly contain an assertion of fact.  See Schwartz v. Am. Coll. of Emergency Physicians, 215 F.3d at 1145  ("Certain expression of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim.")(citing Milkovich v. Lorain Journal Co., 497 U.S. at 18-19).  The Supreme Court of the United States has recognized that simply couching statements in terms of an opinion does not dispel its implications of a false assertion of fact.  See Milkovich v. Lorain Journal Co., 497 U.S. at 19 ("It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'")(quoting Cianci v. New Times Publ'g Co., 639 F.2d at 64)(internal alterations omitted).

"[T]he crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact."  Marchiondo v. Brown, 98 N.M. 404, 649 P.2d at 472.  This determination must be made by considering the statement in context of the entirety of the publication.  See Mendoza v. Gallup Indep. Co., 107 N.M. at 723, 764 P.2d at 494 ("In resolving the distinction between fact and opinion, the trial court should consider . . . the entirety of the publication . . . .  In considering the 'entirety' requirement, the published statement must be read in context.").  The Supreme Court of New Mexico has illustrated how a court should evaluate whether the ordinary person may understand the expression to imply a statement of fact:

In Kutz v. Independent Pub. Co., Inc., 97 N.M. 243, 638 P.2d 1088 (Ct.

App.1981), the court set out the criteria for determining as a matter of law, when a statement may be said to be opinion or fact. "[I]f the material as a whole contains full disclosure of the facts upon which the publisher's opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion, and absolutely privileged." Id. at 245, 638 P.2d at 1090 (citation omitted). Conversely, where there are implications in the statement "that the writer has private, underlying knowledge to substantiate his comments about plaintiff," and such knowledge implies the existence of defamatory facts, the statement is deemed to be factual and not privileged. Id. at 246, 638 P.2d at 1091.

98 N.M. 404, 649 P.2d at 472. Accord Mendoza v. Gallup Indep. Co., 107 N.M. at 724, 764 P.2d at 495 ("[I]f the material, as a whole, fully discloses the facts upon which the opinion is based and permits the reader to reach [the reader's] own opinion, the statement is generally an opinion rather than an assertion of fact, and is absolutely protected.").

Particular management styles or skills, and leadership abilities, are matters of opinion and not capable of being proved true or false. See Mino v. Clio Sch. Dist., 661 N.W.2d 586, 597 (Mich. Ct. App. 2004)(holding that statement about the plaintiff's "leadership style and the management of the school budget . . . . were subjective opinions and are not provable as false"); Rose v. Hollinger Intern., Inc., 889 N.E.2d 644, 652 (Ill. Ct. App. 2008)(noting that a statement regarding the plaintiff's "abusive behavior [and] bizarre management style . . . clearly are not actionable opinions"). In Mangan v. Corp. Synergies Group, Inc., 834 F. Supp. 2d 199 (D.N.J. 2011), the Honorable Jerome B. Simandle, United States District Judge, concluded that the statements that a company "'had lost faith in Plaintiff's leadership ability and his management skills' and that Plaintiff 'had left [the company] because he was not performing his job,'" were opinions. 834 F. Supp. 2d at 205. Judge Simandle opined: "Whether someone has proficient management skills or leadership skills is an opinion and it not subject to ready verification. Instead, such statements merely reflect the state of mind of [the company's] officers regarding Plaintiff's job performance

-41-

and therefore cannot be considered defamatory."  834 F. Supp. 2d at 205 (citing Lecours v. Mobil Corp., 2005 WL 3500802, at *6 (N.J. Super. Ct. App. Div. Dec. 23, 2005)("[P]erformance reviews are permissible expressions of opinion and are not defamatory as a matter of law.")).  Judge Simandle contrasted these statements with statements "that Plaintiff engaged in 'financial improprieties' or 'cooked the books' and misled [the company's] employees into believing that [the] company was making a profit."  834 F. Supp. 2d at 205.  Judge Simandle reasoned that these statements were actionable opinions, because the statements suggests that there are verifiable underlying "facts indicating that not only did Plaintiff lie to the company's employees about . . . profit, but also that Plaintiff engaged in financial improprieties by 'cooking the books.'" 834 F. Supp. 2d at 205.

Heyward argues that Statement 1 "incorrectly asserts that Plaintiff was irresponsible on multiple loans, which is false with regard to the Copper Square loan and any other loan during plaintiff's tenure."  Response at 7.  Even construing the statement in a light most favorable to Heyward, Statement 1 does not assert that Heyward was irresponsible on multiple loans.  Statement 1 provides:

> But critics lay the responsibility for making the Copper Avenue loan at the feet of CEO Robert Heyward, alleging that the loan merely represented the largest example of a "cowboy style" of leadership that, they charged [sic] depended more on Heyward's desire to show off and make a big splash than on due diligence and responsibility that should characterize a safely run credit union.

Complaint ¶ 15a, at 3.  Stating that critics allege that the Copper Square loan represented the largest example of a leadership style that depended more on wanting to show off than on due diligence and responsibility does not lead to the inference that Heyward was irresponsible on multiple loans; it leads to the inference, rather, that the loan is the largest example of Heyward's leadership style.  Heyward's leadership style may be exhibited in other ways that he performs his job -- such as the

charge in Statement 2 that he fires executives who disagrees with him, or the charge in Statement 3 that he makes unilateral decisions about the loans. The gist, or thrust, of Statement 1 is that the Copper Square loan is an example of what critics "alleg[e]" is Heyward's "'cowboy' style of leadership that, the[] [critics] charged[,] [was defined by,] or depended . . . [up]on Heyward's desire to show off and make a big splash[,] [rather] than on due diligence and responsibility," which the critics allege should characterize a safely run credit union. Complaint ¶ 15a, at 3.

The Court cannot speculate how one would verify Statement 1 -- that Heyward did or did not possess a cowboy style of leadership -- or even how a cowboy style of leadership would be defined. While it is of course true that an author cannot simply make a statement opinion protected by couching it in terms of an opinion, see Milkovich v. Lorain Journal Co., 497 U.S. at 19, or, in this case, stating that "critics alleg[e]," Complaint ¶ 15a, at 3, as Judge Simandle concluded in Mangan v. Corp. Synergies Group, that the critics allege that Heyward made the Copper Square loan because of his cowboy leadership style merely reflects the state of mind of the critics regarding Heyward's job performance. The critics' belief or opinion that Heyward has a cowboy leadership style that, based on their review of his job performance, perhaps in making loans, was caused by his desire to show off -- i.e., the critics' "state of mind" -- cannot be proved true or false, "and therefore cannot be considered defamatory." 834 F. Supp. 2d at 205. Similarly, that Heyward's leadership style is defined by his desire to show off and "make a big splash" cannot be verified. There may of course be verifiable facts that underlie the critics' opinion that Heyward desires to show off -- whether First Financial issued more press releases under his tenure, whether the press releases mention his name more often than his predecessors -- but even those verifiable facts do not prove or disprove that Heyward desires to show off, or make a big splash. While such a conclusion might be drawn from those facts, however popular that opinion may be, it is not the only conclusion that can possibly be

drawn.  Rather, the critics' interpretation of any facts underlying their conclusion that Heyward has

a cowboy style of leadership, or that Heyward desires to show off and make a big splash, are the

critics' subjective opinions regarding those facts and are thus not assertions of fact.  Moreover,

ordinary persons reading that critics allege Heyward has a cowboy style of leadership, or that he

desires to make a big splash, would likely understand it as an expression of the critics' opinion and

not an expression of existing fact.  See Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472.

("[T]he crucial difference between statement of fact and opinion depends upon whether ordinary

persons hearing or reading the matter complained of would be likely to understand it as an

expression of the speaker's or writer's opinion, or as a statement of existing fact.").  Statement 1,

therefore, is unambiguously an expression of opinion and is not an assertion of fact, and is thus not

actionable for defamation.

### B. STATEMENT 2 -- "HEYWARD'S INCLINATION TO FIRE EXECUTIVES WHO HAVE DISAGREED WITH HIM" -- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT DEFAMATORY.

In his Complaint, Heyward contends that Statement 2 is false and that it is defamatory, as

it would cause people to not want to apply to work with him.  The Credit Union Times argues that

the statement is not defamatory; whatever reason Heyward had for firing executives, even if it was

solely because they disagreed with him, is not defamatory.  See Motion to Dismiss at 8.  A

defamatory communication is a communication that tends to expose the plaintiff to contempt, to

harm the plaintiff's reputation, or to discourage others from associating or dealing with the plaintiff.

See Civ. U.J.I. 13-1007 N.M.R.A.; Marchiondo v. New Mexico State Tribune Co., 98 N.M. at 287,

648 P.2d at 326 ("Any false and malicious writing published of another is libelous . . . when its

tendency is to render him contemptible or ridiculous in public estimation, or expose him to public

hatred or contempt, or hinder virtuous men from associating with him.")(quoting Colbert v. Journal

Publ'g Co., 142 P. at 146).  Statements that are not defamatory in their "plain and obvious meaning,"

may still be actionable for defamation where they are "susceptible of two reasonable interpretations,

one of which is defamatory and another which is innocent, or . . . are not on their face defamatory,

but which may become so when considered in connection with innuendos and explanatory

circumstances."  Marchiondo v. New Mexico State Tribune Co., 98 N.M. at 288, 648 P.2d at 327.

See Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 ("New Mexico cases support

recognizing an action for defamation based on implication.").   "The theory of defamation by

implication recognizes that the reputational injury caused by a communication may result not from

what is said but from what is implied."  Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at

741. The Court of Appeals of New Mexico endorsed a test for defamation by implication that the

United States Court of Appeals for the District of Columbia put forth:

> [T]he court must first examine what defamatory inferences might reasonably
> be drawn from a materially true communication, and then evaluate whether the
> author or broadcaster has done something beyond the mere reporting of true facts to
> suggest that the author or broadcaster intends or endorses the inference. We
> emphasize that the tortious element is provided by the affirmative conduct of the
> author or broadcaster, although it is immaterial for purposes of finding defamatory
> meaning whether the author or broadcaster actually intends or endorses the
> defamatory inference.

Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 (quoting White v. Fraternal Order of

Police, 909 F.2d  512, 520 (D.C. Cir. 1990)).   In determining whether a statement may be

defamatory by implication, the statement must be analyzed in context, in both the "immediate

context . . . [and] the broader social context into which the statement fits."  Fikes v. Furst, 2003-

NMSC-033, ¶ 18.

Moore v. Sun Publ'g Corp. is analogous to this case.  Because the Supreme Court of New

Mexico has cited to Moore v. Sun Publ'g Corp. with approval in two recent defamation cases, te

Supreme Court of New Mexico likely agrees with the Court of Appeals of New Mexico,[8] and Moore v. Sun Publ'g Corp. is likely determinative whether Statement 3 defames Heyward. Where the plaintiff contended that a publication defamed him, the Court of Appeals of New Mexico concluded that, because the publication described a "disagreement over policy, rather than making any particular, direct statement about [the plaintiff's] fitness," the plain and obvious meaning was not defamatory. 118 N.M. at 380, 881 P.2d at 740. The Court of Appeals of New Mexico held, however, that the statements in the notice were nonetheless defamatory, because the statements went beyond the facts and implied some further wrongdoing on the plaintiff's behalf, and that the plaintiff was not fit to perform his job. 118 N.M. at 380, 881 P.2d at 740. As in Moore v. Sun Publ'g Corp., where being fired for policy disagreements was not defamatory, Statement 2 -- "Heyward's inclination to fire executives who have disagreed with him." -- is not defamatory, because it implies that if executives disagreed with Heyward, on policy matters for instance, he would fire them. The

_____

[8]Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996). In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case. See Wade v. Emcasco Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007). The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940). To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law." Wade v. Emcasco Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(citations and internal quotation marks omitted). Because the New Mexico Supreme Court has cited Moore v. Sun Publ'g Corp. with approval in two recent defamation cases -- Fikes v. Furst, 2003-NMSC-033, ¶ 17, and Smith v. Durden, 2012-NMSC-010, ¶ 32, 276 P.3d 943 -- the Court concludes that the Supreme Court of New Mexico, if presented with the same case, would rule based on Moore v. Sun Publ'g Corp., and based on the analysis of the other Court of Appeals of New Mexico cases on which the Court relies in this memorandum opinion and order.

statements in Moore v. Sun Publ'g Corp. implied that the plaintiff had some unfitness to perform the duties of his profession.  In contrast, while Statement 2 may imply that Heyward fires those who disagree with him, or even that it is "his way or the highway," Tr. at 19:25 (Danoff), it does not imply that Heyward is in any way unfit to perform his job as CEO.  Statement 2 does not imply that Heyward "was incompetent," 881 P.2d at 740, or that he "engaged in 'financial improprieties' or 'cooked the books,'" 834 F. Supp. 2d at 205, or otherwise lead to an implication of a similar level of wrongdoing on Heyward's behalf.  Any implication that may derive from the assertion that Heyward fired employees for disagreeing with him, while maybe unflattering, does not rise to the level of rendering Heyward contemptible or ridiculous in public estimation, expose him to contempt or hatred, or hinder virtuous people from associating with him.  See Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. at 1384 ("A statement is defamatory if 'it has a tendency to render the party about whom it is published contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.'")(quoting Andrews v. Stallings, 119 N.M. at 482, 892 P.2d at 615).  Prospective employees may stay away from working for Heyward, not because he lacks virtue or is immoral, but because of his management style; to say that people refuse to work for him is not sufficient to constitute a defamatory statement.  See Churchill v. Barach, 863 F. Supp. 1266, 1274 (D. Nev. 1994)(holding a customer's statement about an employee that "I found her to be rigid, uninformed, incompetent and unhelpful at best," was not actionable for defamation); Schibursky v. Int'l Bus. Machs. Corp., 820 F. Supp. 1169, 1181-82 (D. Minn. 1993)(holding that co-workers' complaints that the plaintiff "was 'hard to work with' or 'rude' [are] statements [that] relate to [the plaintiff's] personal traits and, as a matter of law, are . . . [not] actionable"); Hunt v. Univ. of Minnesota, 465 N.W.2d 88, 91, 94-95 (Minn. Ct. App. 1991)(holding that statement that co-worker "lacked warmth, was insincere, and had no sense of

integrity," was not actionable for defamation).  Statement 2, therefore, is not defamatory as a matter

of law and is thus not actionable for defamation.

### C.  STATEMENT 3 -- "BUT ALL CHARGED THAT HEYWARD'S DETERMINATION TO MAKE UNILATERAL DECISIONS AND A LACK OF ATTENTION TO DETAIL LED TO THE COPPER SQUARE LOAN AND A SIGNIFICANT NUMBER OF POOR LOANS" – IS ACTIONABLE FOR DEFAMATION, BECAUSE IT COULD IMPLY KNOWLEDGE OF UNDERLYING DEFAMATORY FACTS AND IS THUS NOT UNAMBIGUOUSLY OPINION.

Heyward complains that Statement 3 is untrue, that the Credit Union Times has "no basis

in fact" for asserting that there was a significant number of poor loans, and that "had CU Times

performed due diligence and a reasonable investigation rather than relying on the unsubstantiated

opinions of the anonymous critics or had given Mr. Heyward the opportunity to address these

claims, it would have determined the allegations to be false and inaccurate."  Complaint ¶ 15c, at

3-4.  The Credit Union Times argues that the statement is not actionable for defamation based on

two grounds: (i) it is substantially true; and (ii) "[i]t is impossible to prove or disprove what a 'poor'

loan is, or how many of them would constitute a 'significant number.'" Motion to Dismiss at 11-12.

To support a claim for defamation, the asserted statement of fact must be false in a material way;

insignificant inaccuracies are insufficient.  See Civ. U.J.I. 13-1006 N.M.R.A.; Franklin v. Blank, 86

N.M. at 588, 525 P.2d at 948 (holding that the statement is not actionable for defamation where "the

imputation is substantially true").  The Supreme Court has provided guidance on when a statement

is substantially true:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified.  Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Masson v. New Yorker Magazine, Inc., 501 U.S. at 516-17 (internal quotations and citations

-48-

omitted).

Construing Statement 3 in a light most favorable to Heyward, and drawing all reasonable inferences in his favor, the gist or thrust of Statement 3 is that Heyward is determined to make unilateral decisions, that he is inattentive to details, and that these qualities of Heyward's led to the Copper Square loan and "a significant number of other poor loans."  Complaint ¶ 15c, at 3.  In analyzing whether Statement 3 is actionable as an assertion of fact, the Court notes that it is couched in terms of an opinion, as it appears to be the Article's author relaying Heyward's critics' "charge[s]" or opinions.  The Supreme Court has made clear, however, that couching the assertion in terms of an opinion does not preclude this statement from being actionable as a false assertion of fact:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

Milkovich v. Lorain Journal Co., 497 U.S. at 18-19.  As the Supreme Court in Milkovich v. Lorain Journal Co. reasoned that a speaker cannot dispel a false assertion of fact by stating it in terms of the speaker's opinion, an author cannot do so by couching the statement in terms of critics' opinions, rather than the author's opinion.  Statement 3, therefore, can cause as much danger to Heyward's reputation as if the statement stated only that Heyward is inattentive to details, has a desire to make unilateral decisions, and that these desires of his caused a significant number of poor loans.  The Credit Union Times as much as concedes this reading; nowhere in asking the Court to find that Statement 3 is not actionable for defamation does it argue that it is protected opinion because it is the critics' opinions, rather than the Credit Union Times' or the author's own.  See Motion to

Dismiss at 8-12.

Although Heyward's Complaint states that his approval of the Copper Square loan was based on representations and presentations of others at First Financial, Heyward concedes that he had sole authority to sign off on the Copper Square loan because of its size and that he authorized the loan. See Complaint 15g, at 5 ("Although Mr. Heyward was the only person at First Financial who could approve the Copper Square loan due to its size, the approval was based upon the representations and presentations of the business loan department . . . ."). To the extent that Statement 3 asserts that Heyward authorized the Copper Square loan, therefore, Statement 3 is substantially true.

That Heyward was not privy to the same information about Garcia as was his staff who were working on the loan, and that Heyward made the loan notwithstanding Garcia's "well-documented, public record of real estate development failures," Motion to Dismiss at 9, does not necessarily make substantially true that the loan was the result of Heyward's lack of attention to detail. Although these factors perhaps weigh in favor of concluding that Heyward was inattentive to details regarding the Copper Square loan, construing Heyward's Complaint in a light most favorable to Heyward and drawing all inferences in his favor, as the Court must do at this stage, a factfinder may be presented with facts regarding details of which Heyward was attentive and find that he was attentive to detail. The test for whether a statement is sufficiently true to avoid an allegation of defamation requires more, however. The test is whether the substance or the gist of the statement would have a different effect on the mind of the reader from that which the truth would have produced. See Masson v. New Yorker Magazine, Inc., 501 U.S. at 516-17. It is true that First Financial had to foreclose on the Copper Square loan shortly after making it. It is also true that in 2008, when Heyward authorized the loan, Garcia had a publicly documented record of real-estate failures, as Garcia or his companies were involved in multiple civil lawsuits. It is also the case, as Heyward admits in his Complaint,

that the implication that Heyward "was privy to the same information details [sic] as was the staff involved in the business loan department who were working on the loan . . . is untrue and inaccurate." Complaint ¶ 15g, at 6.  The Court concludes that, even if the factfinder in this case were to find that, notwithstanding these pleaded truths, Heyward was attentive to details in authorizing the Copper Square loan, the gist of the statement would not have produced a different effect on the mind of the reader than the truth.  The implication that Heyward authorized the loan at the time that these substantial truths about Garcia and his poor history in real estate existed, including his involvement  in ongoing litigation concerning real-estate loans, and that there was available to Heyward and First Financial detailed information about Garcia's history would have had no worse effect on the mind of the readers than the gist of the assertion that Heyward made the loan because of a lack of attention to detail.

That Heyward's inattention to detail and determination to make unilateral decisions led to his approval of the Copper Square loan is not the only assertion implied within Statement 3. Statement 3 also asserts that Heyward's inattention to detail and determination to make unilateral decisions led to a "significant number" of poor loans.  The Credit Union Times argues that this "vague and subjective charge" that Heyward approved a significant number of poor loans is not actionable for a defamation claim, because "[i]t is impossible to prove or disprove what a 'poor' loan is, or how many of them would constitute a 'significant number.'" Motion to Dismiss at 11-12. In other words, the Credit Union Times asserts that Statement 3's implication that, in addition to the Copper Square loan, there were a significant number of poor loans is not susceptible to being proved true or false.  The Court does not agree, however, that the plain language of Statement 3 does not state a fact, and is not susceptible to being proved true or false.  If Heyward had authorized one hundred loans at First Financial before the Copper Square loan that involved circumstances similar

to the Copper Square loan, that would likely prove true the fact that Heyward made a significant number of poor loans. Similarly, if Heyward had authorized over one thousand loans that were similar to the Copper Square loan, it would likely be beyond debate whether Statement 3 could be proved true or false. Nevertheless, Statement 3's assertion that Heyward's inattention to detail and determination to make unilateral decisions led to a significant number of poor loans, in context, would likely be understood as an expression of opinion by the ordinary person reading the Article. Were that the test for whether a statement is actionable as asserting a fact, that would end the Court's inquiry into Statement 3. The test, however, is whether the statement, even if the plain language is read as an opinion, "includes an asserted statement of fact;" not whether the statement itself states a fact. Civ. U.J.I. 13-1002(B)(ii)(emphasis added). Thus, as the Tenth Circuit has recognized: "Certain expressions of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim." Schwartz v. Am. Coll. of Emergency Physicians, 215 F.3d at 1145. While Statement 3 does not state a fact that is susceptible to being proved true or false, viewing Heyward's allegations in the light most favorable to him, and drawing all reasonable inferences in his favor, Statement 3 could imply that the reporter, or the critics, had knowledge of the fact that Heyward approved multiple loans, in addition to the Copper Square loan, and had knowledge of certain facts about these loans that led the critics to evaluate the loans as "poor." If these facts are false, and Heyward did not unilaterally approve of multiple loans, or if Heyward did, but there were not facts about these loans that would lead to the conclusion that they were "poor" loans, a reasonable factfinder may find that this statement implied defamatory facts. Statement 3 therefore implies "that 'the writer [or critics] ha[d] private, underlying knowledge to substantiate [the] comments about [Heyward],' and such knowledge implies the existence of defamatory facts." Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472 (quoting Kutz v. Indep.

-52-

Publ'g Co., Inc., 97 N.M. at 246, 638 P.2d at 1091).  Even with these implied factual assertions,

Statement 3, because it is couched in terms of the critics' opinion, may still qualify as an opinion

not actionable for defamation, "[i]f the material as a whole contains full disclosure of the facts upon

which the . . . opinion is based and which permits the reader to reach [the reader's] own opinion."

Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472 (quoting Kutz v. Indep. Publ'g Co., Inc.,

97 N.M. at 245, 638 P.2d at 1090).  The Credit Union Times does not assert in its Motion to Dismiss

that the Article contains full disclosure of the facts about any loans other than the Copper Square

loan.  Thus, construing the allegations in the Complaint in a light most favorable to Heyward, and

drawing all inferences in his favor, the Court "cannot say as a matter of law that the statements were

not understood as [implying knowledge of underlying defamatory] fact[s]."  The Court, therefore,

cannot conclude at this stage that Statement 3 is unambiguously opinion that is not actionable for

defamation as a matter of law.

### D. STATEMENT 4 -- "THE U.S. ATTORNEY HAS INDICTED DEVELOPERS FOR FRAUD BUT CRITICS BLAME CU CEO" – IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT DEFAMATORY OF HEYWARD.

Heyward alleges that "[t]his accusation in the Article implies Mr. Heyward committed fraud

by approving this loan."  Complaint ¶ 15d, at 4.  The Credit Union Times argues that Statement 4

"and the Article as a whole, imply no such thing."  Motion to Dismiss at 12.  The Credit Union

Times contends that, "[b]ecause this statement is not reasonably capable of bearing the defamatory

implication alleged by plaintiff, it cannot properly form the basis of a defamation claim."  Motion

to Dismiss at 12.  "The theory of defamation by implication recognizes that the reputational injury

caused by a communication may result not from what is said but from what is implied."  Moore v.

Sun Publ'g Corp., 881 P.2d at 741.  Only implications that might be reasonably drawn from a

statement may be actionable for defamation:

> [T]he court must first examine what defamatory inferences might <u>reasonably</u> be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference. We emphasize that the tortious element is provided by the affirmative conduct of the author or broadcaster, although it is immaterial for purposes of finding defamatory meaning whether the author or broadcaster actually intends or endorses the defamatory inference.

<u>Moore v. Sun Publ'g Corp.</u>, 118 N.M. at 381, 881 P.2d at 741 (emphasis added).  In <u>Moore v. Sun Publ'g Corp.</u>, the Court of Appeals of New Mexico did not read the alleged defamatory statements in isolation, but rather looked at the notice as a whole to determine what "defamatory inference or <u>inferences</u>" might be drawn.  118 N.M. at 381, 881 P.2d at 741 (emphasis added).  Thus, in determining what defamatory inferences may be drawn from an alleged defamatory statement, the Court will analyze the statement in the context of the Article as a whole.  <u>Accord</u> <u>Fikes v. Furst</u>, 2003-NMSC-033, ¶ 18 (holding that whether a statement is defamatory by implication must be analyzed in the context of the statement)("In addition to the immediate context of the statement, we also look to 'the broader social context into which the statement fits.'").

Statement 4 must be read in the context of the Article as a whole.  All twelve statements that Heyward alleges are defamatory, as well as the Article generally, criticize him for approving of the Copper Square loan and his loan practices in general, because he cares more about showing-off than he does performing due diligence, and/or being attentive to details in approving loans.  <u>See</u>, <u>e.g.</u>, Statement 1 (noting Heyward's "desire to show off" rather than his desire to perform "due diligence"); Statement 3 (complaining of Heyward's "lack of attention to detail); Statement 9 (charging that "the Copper avenue loan was . . . the largest in a . . . pattern without regard to due diligence"); Statement 10 (stating that "[c]ritics reported that Heyward had bought these loan

-54-

participations with little or no due diligence").  Moreover, this statement is not the only reference

to the United States Attorney or to fraud.  The Article states that Garcia and the other two developers

were indicted for bank fraud and money laundering, and one had pleaded guilty.  See Article at 2.

The Article also explains some of the circumstances of the Garcia's fraudulent activity.  See Article

at 2.  Construing the allegation in a light most favorable to Heyward, in the context of the Article,

while a reasonable person would likely infer that the critics blame the failure of the Copper Square

loan on Heyward, rather than on Garcia having committed fraud with the loan money, a reasonable

person reading this statement could not draw an inference of plausibility that Heyward is guilty of

bank fraud.  Statement 4, therefore, is not defamatory by implication as a matter of law and is not

actionable for defamation.  See Tellabs, Inc. V. Makor Issues & Rights, Ltd., 551 U.S. at 322

("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged

facts would the defendant prevail on a motion to dismiss.").

> **D.** **STATEMENT 5 -- "CRITICS CHARGE LOAN AS THE LATEST IN A PATTERN OF RECKLESS LENDING" – IS ACTIONABLE FOR DEFAMATION, BECAUSE IT COULD REASONABLY BE READ AS CONCERNING HEYWARD AND IT COULD IMPLY KNOWLEDGE OF UNDERLYING DEFAMATORY FACTS.**

Heyward alleges that Statement 5 is "inaccurate . . . [,] defames the reputation of Ben

Heyward . . . . [and to avoid liability for defamation], the CU Times must prove that a pattern of

reckless lending exists . . . attributable to Heyward."  Complaint ¶ 15e, at 4-5.  The Credit Union

Times argues that this statement is not actionable for defamation, as the statement is not concerning

Heyward, and because it is not susceptible to being proved true or false because the

"characterization of First Financial's lending history as 'reckless' is vague and imprecise . . . . [and]

proving the truth or falsity of the charge . . . would require speculation."  Motion to Dismiss at 12-

13.

"The communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff."  Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. at 1384 (quoting Civ. U.J.I. 13-1005 N.M.R.A.).  "There must be evidence showing that the attack was read as specifically directed at the plaintiff."  Rosenblatt v. Baer, 383 U.S. at 81.  In New York Times Co. v. Sullivan, the Supreme Court of the United States held that the advertisement that was alleged to have defamed the plaintiff, police commissioner, could not reasonably be read to be "of and concerning" the plaintiff. 376 U.S. at 289.  The Supreme Court noted that "[t]here was no reference to respondent in the advertisement," and concluded that "despite the ingenuity of the arguments which would attach the significance to the word 'They,' it is plain that these statements could not reasonably be read as accusing respondent of personal involvement in the acts in question."  376 U.S. at 288-89.

If a defendant publishes a defamatory communication concerning a group of persons, the defendant may be liable to an individual member if the context of the publication reasonably gives rise to the inference that the article is referencing the individual member.  See Restatement (Second) of Torts § 564A ("One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if, . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.").  The Court of Appeals of New Mexico has recognized:

> No action lies for publication of defamatory words concerning a group or class of persons unless the group or class is so small that the matter can reasonably be understood to refer to the plaintiff, or unless the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Saenz v. Morris, 106 N.M. at 533, 746 P.2d at 162 (citing Restatement (Second) of Torts § 564A (1977)).

If Statement 5 does not concern Heyward, it does not injure his reputation, and is thus not defamatory. On its face, Statement 5 does not refer to Heyward. It would be reasonable, if reading the statement in isolation, to believe that Statement 5 is alleging that "[c]ritics charge [the Copper Square] loan as the latest in a pattern of reckless lending [of the financial institution that lends the money]." Whether Statement 5 is concerning Heyward requires the Court to evaluate the statement in the context of the entire Article, not in isolation, because the reader would evaluate the statement in context of reading the entire Article. See Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. at 1384 ("The communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff."). The reader, as the person to whom Statement 5 was communicated, in reading Statement 5, would also read the other statements that reference a lending pattern and concern Heyward: Statement 1 -- that the critics blame Heyward as responsible for the Copper Square loan; Statement 7 -- that Heyward is the only person at First Financial with authority to authorize the Copper Square Loan; Statements 9 and 10 -- that the critics observe the Copper Square loan as the largest in a systematic pattern of imprudent lending, including loans Heyward bought without due diligence; and Statement 3 -- that Heyward's determination to make unilateral decisions and inattention to detail led to the Copper Square loan, which was one of "a significant number of poor loans." Statement 5 is not directed at a governmental entity or a group of governmental actors, and thus does not implicate "the issue whether defamatory speech is 'of and concerning' an individual or the government itself." Andrews v. Stallings, 119 N.M., at 484, 892 P.2d at 617 ("In a close case on the issue of whether defamatory speech is 'of and concerning' an individual or the government itself, it should be construed as of and concerning the government."). Statement 5 is therefore distinguishable from the alleged defamatory statements held not to be concerning the plaintiffs in New York Times v. Sullivan and Andrews v. Stallings.

See New York Times v. Sullivan, 376 U.S. at 288-89 (holding that an advertisement that included

"allegations that did concern the police or police functions" did not concern the plaintiff, because

the advertisement did not "make even an oblique reference to [the plaintiff]"); Andrews v. Stallings,

119 N.M. at 484, 892 P.2d at 617 (holding that statements in an article specifically directed at "'the

village's appearance of impropriety'" did not concern the individual plaintiffs).  In the context of

the Article as a whole, and in light of the other statements in the Article that Heyward alleges are

defamatory, that Statement 5 is concerning Heyward and his lending history is not a matter of

innuendo, speculation, or conjecture; rather, an ordinary reader of the Article would understand that

Statement 5 is directed toward Heyward.  See Andrews v. Stallings, 119 N.M. at 486, 892 P.2d at

619 ("[D]efamation must be clearly directed toward plaintiff and 'not be the product of innuendo,

speculation or conjecture.'")(quoting Ferguson v. Watkins, 448 So.2d 271, 875 (Miss. 1984)).  The

Court thus concludes that Statement 5 was concerning Heyward.

The Credit Union Times also asserts that Statement 5 is not actionable for defamation,

because what constitutes a reckless lending history is not susceptible to being proved true or false.

The Credit Union Times' argument, and the Court's analysis of this argument, parallel its analysis

of Statement 3.  What constitutes a reckless lending history may be a matter of opinion, may have

been the critics' opinion in the case of the Article, and is likely not susceptible to being proved true

or false.  As the Court reasoned, however, that the critics' alleged opinion in Statement 3 regarding

a substantial amount of poor loans is not unambiguously a statement of opinion, because drawing

all reasonable inferences in Heyward's favor, it could imply that the critics have knowledge of

defamatory facts about a number of other loans Heyward authorized, Statement 5 could also imply

that the critics have knowledge that led them to the conclusion that Heyward's authorization of the

Copper Square loan is the latest in a pattern of reckless lending.  See Marchiondo v. Brown, 98 N.M.

at 404, 649 P.2d at 472 ("[W]here there are implications in the statement 'that the writer has private, underlying knowledge to substantiate his comments about plaintiff,' and such knowledge implies the existence of defamatory facts, the statement is deemed to be factual and not privileged.).  As the Court noted in its analysis of Statement 3, nowhere in the Article are any other facts regarding any other loans that Heyward authorized.  See Marchiondo v. Brown, 98 N.M. at 404 (holding that an opinion that implies underlying facts is not actionable "[i]f the material as a whole contains full disclosure of the facts upon which the . . . opinion is based and which permits the reader to reach [the reader's] own opinion.").  The undisclosed facts that led Heyward's critics to conclude that his lending pattern is reckless could possible be defamatory.  Statement 5 is therefore not unambiguously a statement of opinion that does not include a factual assertion.  Because Statement 5 may be read as concerning Heyward and is not unambiguously a privileged opinion, Statement 5 may be  actionable for defamation.

> **F.    STATEMENT 6 -- "FOR HIS PART, HEYWARD DID NOT ANSWER DETAILED QUESTIONS ABOUT THE COPPER AVENUE LOAN, BUT REPORTED THAT THE CREDIT UNION RELIED ON THE BORROWER'S REPRESENTATIONS" -- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE REFUSAL TO ANSWER A REPORTER'S QUESTIONS IS NOT DEFAMATORY.**

Heyward alleges that this statement is defamatory, because it "implies that CU Times reporter gave Mr. Heyward the opportunity to respond or comment on the allegations of the anonymous critics that CU Times relied upon as fact," which he alleges "is not the case."  Complaint ¶ 15f, at 5.  The Credit Union Times asserts that Statement 6 is not defamatory, because "[n]ews reports often include a statement that the subject of the report . . . has declined to comment."  Motion to Dismiss at 13.  Stating that an individual accused of some form of impropriety is so commonplace in publications that asserting that an individual refused to comment would not tend to expose the

individual to contempt, harm the individual's reputation, or discourage others from associating or dealing with the individual.  See Brewer v. Capital Cities/ABC, Inc., 986 S.W.2d 636, 643 (Tex. Ct. App. 1998)("Because the statement that Brewer declined to be interviewed would not tend to injure his reputation, thereby exposing him to public hatred, contempt, ridicule, or financial injury, the trial court properly rejected Brewer's claim that the statement was defamatory.").  In Dodds v. Am. Broad. Co., 145 F.3d 1053 (9th Cir. 1998), the United States Court of Appeals for the Ninth Circuit held that a news report's statement regarding the plaintiff's refusal to comment was not defamatory. See 145 F.3d at 1066-67.  The Ninth Circuit reasoned that the news report's statement that the plaintiff "refused to comment, coupled with the film clip of him walking away [from the interviewer] as she attempted to interview him . . . does not constitute defamation.  To the contrary, it is simply a regular part of the nightly news these days." 145 F.3d at 1066-67. Similarly in Chapin v. Greve, 787 F. Supp. 557 (E.D. Va. 1992), the Honorable T.S. Ellis, III, United States District Judge, in granting the defendant's motion to dismiss, concluded that references to the plaintiff declining to be interviewed, and references to the plaintiff's refusal to answer written questions regarding alleged fraudulent conduct on a public project, was, as a matter of law, not defamatory. See 787 F. Supp. at 566.  The plaintiff argued that the statements were defamatory by implication, because they implied that the plaintiff "was being evasive in order to hide improprieties."  787 F. Supp. at 566.   Judge Ellis disagreed, stating: "[R]efusing to answer reporters' questions is commonplace and certainly cannot reasonably be said to tarnish one's reputation.  People in the public eye do it all the time. There is nothing odious or disgraceful about it." 787 F. Supp. at 566. Construing Statement 6 in the light most favorable to Heyward, an ordinary person reading the statement may reasonably infer that Heyward, in declining to respond to the questions about the Copper Square loan, was being evasive or hiding improprieties.  While such an inference may be

unflattering of Heyward or embarrassing to Heyward, whether the statement is defamatory must be analyzed in "the broader social context into which the statement fits." Fikes v. Furst, 2003-NMSC-033, ¶ 18. As the Ninth Circuit concluded in Dodds v. Am. Broad. Co., and as Judge Ellis concluded in Chapin v. Greve, in the context of today's society, refusing to comment on a news article does not tend to expose Heyward to contempt, or to discourage others from associating or dealing with him, and is therefore not defamatory. Statement 6 thus is not actionable for defamation.

> **G.   STATEMENT 7 -- "HEYWARD WAS THE ONLY ONE AT FIRST FINANCIAL WITH THE AUTHORITY TO SIGN OFF ON THE COPPER SQUARE AVENUE LOAN, THE CRITICS SAID, AND HE KNEW WHAT THE CREDIT UNION STAFF KNEW AND WENT ON TO APPROVE IT ANYWAY" -- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE THE GIST OF THE STATEMENT IS NO MORE DEFAMATORY THAN THE PLEADED TRUTH.**

Heyward asserts that Statement 7 "directly implies that Mr. Heyward was privy to the same information details as was the staff involved in the business loan department who were working on the loan which is untrue and inaccurate . . . ." Complaint ¶ 15g, at 6. The Credit Union Times argues that, whether Heyward had the same knowledge as First Financial's staff and approved the loan anyway, or whether Heyward did not have that knowledge, and thus approved the loan without due diligence, the statement is not defamatory, because under either scenario the admitted truth would "have the same effect on the reader as the allegedly defamatory statement . . . ." As the Court noted in discussing Statement 3, the Supreme Court of the United States has held that an alleged defamatory statement is not defamatory as a matter of law where "the gist, the sting, of the libelous charge . . . would [not] have a different effect on the mind of the reader from that which the pleaded truth would have produced." Masson v. New Yorker Magazine, Inc., 501 U.S. at 516-17. Heyward admits that he was the only person with authority to approve of the loan. See Complaint ¶ 15g, at

6 ("Mr. Heyward was the only person at First Financial who could approve of the Copper Square loan due to its size . . . ."). Heyward also admits that he was not privy to the same information as his staff. See Complaint 15g, at 6 ("[T]he statement that he had the same information as his staff . . . is false . . . ."). As the Court recognized in its analysis of Statement 3, there was a well-documented, public record of Garcia's previous real estate failures and multiple civil cases against him and his business for these failures at the time that Heyward approved of these loans. First Financial foreclosed on the Copper Square loan within months of approval of the loan. Thus, if Heyward had the same information as his staff and approved the loan anyway, the reasonable reader would likely infer that Heyward's approval of the loan was imprudent or improper. If Heyward did not have the same knowledge of Garcia's history and real estate failures that his staff had, in light of the well-documented public record and that the staff had the knowledge, a reasonable reader of the statement would likely infer that Heyward's approval of the loan was without due diligence, and was imprudent or improper. Thus, as the Court concluded with regard to Statement 3, even if Statement 7 is false, because the false assertion of fact would have the same effect on the ordinary person reading the statement as would the pleaded truth, Statement 7 is not actionable for defamation as a matter of law.

> **H.    STATEMENT 8 -- "SIX OF THE CREDIT UNION'S EXECUTIVE TEAM IN PLACE IN FEBRUARY 2008 WHEN FIRST FINANCIAL MADE THE LOAN HAVE SINCE LEFT" -- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT DEFAMATORY.**

Heyward alleges that Statement 8 is "untrue and inaccurate . . . . [and] further implies that there was a hostile work environment which was defamatory to Mr. Heyward." Complaint ¶ 15h, at 6. The Credit Union Times argues that "[t]his statement cannot form the basis of a defamation action by Heyward for the simple reason that it is not about him." Motion to Dismiss at 15.

Statement 8 must be analyzed in context.  See Fikes v. Furst, 2003-NMSC-033, ¶ 18.  Statement 8 is immediately followed in the same paragraph by two additional sentences, one of which directly references Heyward and the other references First Financial's direction.  See Article at 2 ("Heyward has maintained that none were fired, but sources familiar with the credit union said all six were fired or forced out after they raised questions about the credit union's direction.").  Construing these facts in the light most favorable to Heyward, in the immediate context of the paragraph in which the statement is found in the Article, and in the context of the article as a whole, an ordinary reader could plausibly infer that the statement was intended to refer to Heyward and his management practices.  Thus, Statement 8 is concerning Heyward.  See Schuler v. McGraw-Hill Cos., Inc., 989 F. Supp. at 1384 ("The communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff.").  Statement 8 does not, however, reasonably imply what Heyward alleges it suggests -- that Heyward created a hostile work environment.  The ordinary person reading the Article, even in context of the Article's focus on Heyward and his management style, could not reasonably infer that the statement that six of First Financial's executive team since Heyward made the loan have left "after they raised questions about the credit union's direction," Article at 2, asserts as fact that Heyward created a hostile work environment.  Rather, Statement 8 in the context of the Article would be read to imply what Statement 2 asserts: that Heyward has an inclination to fire executives that disagree with him.  The plain language of Statement 8, that six executives left or were forced out because they disagreed with Heyward and the direction that he was taking First Financial, even in context of the article as a whole, does not reasonably lead to the inference, or suggest that the critics intended the reader to infer, that Heyward created a hostile work environment.  See Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 ("[T]he court must first examine what defamatory inferences might

reasonably be drawn from a materially true communication, and then evaluate whether the author

or broadcaster has done something beyond the mere reporting of true facts to suggest that the author

or broadcaster intends or endorses the inference."). Thus, Statement 8 does not imply that Heyward

created a hostile work environment. Statement 8's implication that Heyward fires executives or

employees that disagree with him over the direction he may be taking First Financial, as the Court

determined with Statement 2, is not defamatory. Statement 8, therefore, is not actionable for

defamation.

> **I.      STATEMENT 9 -- "THE CRITICS ARGUED THEIR CONCERN FLOWED FROM THEIR OBSERVATIONS THAT THE COPPER AVENUE LOAN WAS ONLY THE LARGEST IN A SYSTEMATIC LENDING PATTERN WITHOUT REGARD TO DUE DILIGENCE, INCLUDING THE PURCHASE OF BUSINESS LOAN PARTICIPATIONS" -- IS ACTIONABLE FOR DEFAMATION, BECAUSE IT COULD IMPLY KNOWLEDGE OF UNDERLYING DEFAMATORY FACTS AND IS THUS NOT UNAMBIGUOUSLY OPINION.**

Heyward alleges that Statement 9 is "false . . . [,] misleading and defamatory . . . . [and that]

to substantiate this statement[,] [the] CU Times would have to examine the commercial and business

loan portfolio and prove that the credit union systematically failed to use due diligence." Complaint

¶15i, at 6-7. The Credit Union Times argues that "the sting of the statement here -- that there was

a 'systematic lending pattern' at First Financial 'without regard to due diligence' -- is not susceptible

to a precise meaning," and thus Statement 9 does not include an assertion of fact. Motion to Dismiss

at 15. As the Court concluded with regard to Statements 3 and 5, however, viewing the allegations

in the light most favorable to Heyward, and drawing all reasonable inferences in his favor, Statement

9 could imply that the critics have knowledge of defamatory facts about other loans Heyward

authorized without due diligence, that lead them to the conclusion that there is a systematic pattern

of lending without due diligence. As with Statements 3 and 5, because the Article does not disclose

these defamatory facts about Heyward's other loans on which the critics rely to reach this

conclusion, Statement 8, therefore, could be read to imply an assertion of underlying defamatory

fact, and the Court thus cannot say that it is unambiguously a statement of opinion not actionable

for defamation.

J.     **STATEMENT 10 -- "CRITICS REPORTED THAT HEYWARD HAD BOUGHT THESE LOAN PARTICIPATIONS WITH LITTLE OR NO DUE DILIGENCE FROM A CREDIT UNION WHERE HE HAD WORKED PREVIOUSLY . . ." -- IS ACTIONABLE FOR DEFAMATION, BECAUSE IT COULD IMPLY KNOWLEDGE OF UNDERLYING DEFAMATORY FACTS AND IS THUS NOT UNAMBIGUOUSLY OPINION.**

Heyward alleges that Statement 10 is false and defamatory, and that the Credit Union Times

had no basis on which to publish this statement, because "[t]here was no examination of the

participation loan portfolio by CU Times."  Complaint 15j, at 7.  The Credit Union Times argues

that this statement is not actionable, because, even if it does imply an included factual assertion, the

Article discloses the factual premises on which the opinion is based:

> First, read in the context of the Article as a whole, it is clear that this is simply another variation on the unverifiable view of the critics that more investigation should have been conducted, both on the Copper Square loan and with other First Financial deals such as the business loan participations.  See, e.g., Fikes, 2003-NMSC-033, ¶ 18 (statements must be viewed in context).  Moreover, the Article contains Heyward's defense of his purchase of these business loan participations -- that "First Financial had a low-income designation from the NCUA that permitted it to exceed the otherwise statutory 12.25% business loan cap." [Article at 2].  In fact, however, as the Article reports, the critics said that First Financial did not have this exemption because it never applied for one from the state's credit union regulators, as the NCUA requires. Id.

Motion to Dismiss at 16-17.  What constitutes due diligence almost varies depending on each

person's subjective point of view and experiences.  The ordinary person reading the assertion that

Heyward did not perform due diligence in purchasing the business loan participations would be

likely to understand the assertion as an expression of the author's, or in this case the critics', opinion

and reflective of their impression of Heyward's conduct in performing his work.  Thus, Statement

10 is opinion.  See Marchiondo v. Brown, 649 P.2d at 472 ("The crucial difference between

statement of fact and opinion depends on whether ordinary persons . . . would be likely to

understand the [statement] as an expression of the speaker's or writer's opinion . . .).  While the

plain language of Statement 10 may be understood as opinion, reading Statement 10 in the light

most favorable to Heyward, and drawing all reasonable inferences in his favor, Statement 10 could

reasonably be read in the context of the Article as implying an assertion of fact.  That critics reported

that Heyward bought loans without, what in their opinion, constituted due diligence, could imply

that they have private, undisclosed knowledge of Heyward's conduct in purchasing the loans leading

them to conclude that he did so without due diligence.  In the context of the Article's assertions that

Heyward has a "pattern of reckless lending," made a "significant number of poor loans," and had

"a systematic lending pattern without regard to due diligence, including the purchase business loan

participations," as the Court reasoned that Statements 3, 5, and 8, could imply underlying knowledge

of defamatory facts regarding Heyward's other loans, the ordinary reader could read Statement 10

to imply that the critics have knowledge of underlying defamatory facts of Heyward's conduct in

purchasing the business loan participations.  The Credit Union Times seems to recognize the

possibility of this implied assertion, in its argument that the article discloses Heyward's defense in

purchasing the business loan participations and the critics' response.  The Credit Union Times'

argument, however, is unpersuasive.  The Article may provide how Heyward "previously . . .

defended" the loan participations, and the critics' allegation that Heyward's defense was not truthful,

but these assertions do not provide insight into why the critics reached their conclusion that

Heyward did not perform due diligence in purchasing the business loan participations, nor do they

allow the reader to draw his or her own opinion whether Heyward exercised due diligence in

purchasing the business loan participation, and thus do not exempt the otherwise actionable opinion.

See Marchiondo v. Brown, 649 P.2d at 472 ("[I]f the material . . .  contains full disclosure of the

facts upon which the publisher's opinion is based and which permits the reader to reach his own

opinion, the court in most instances will be required to hold that it is a statement of opinion, and

absolutely privileged.")(emphasis added).  The Court, therefore, cannot soundly find that Statement

10 is unambiguously opinion not actionable for defamation.

> ### K.   STATEMENT 11 --
>
> **IN FURTHER SUPPORT OF THEIR ALLEGATIONS, THE CRITICS POINTED OUT THAT THE CREDIT UNION'S NET WORTH HAS DROPPED STEADILY SINCE HEYWARD TOOK THE HELM IN EARLY 2005.  NCUA RECORDS SHOW THE CU'S NET WORTH RATIO AT THE END OF 2005 STOOD AT 12.32%, TOOK A BRIEF UPTICK TO 12.37% IN 2006 BEFORE FALLING STEADILY TO 9.36% AT THE END OF 2010**
>
> **-- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT FALSE IN A MATERIAL WAY.**

Heyward alleges that Statement 11 is false and defamatory, because "[n]et worth rises and

falls with the close of each month.  To imply that a decline is bad or otherwise abnormal merely

because Mr. Heyward is the CEO is without any factual support and ignores outside economic

factors."  Complaint ¶ 15k, at 8.  The Credit Union Times points out that Heyward does not deny

the accuracy of the figures, and asserts that "whether a decline in a financial institution's net worth

is 'bad' or 'abnormal' is a subjective view, not a verifiable fact."  Motion to Dismiss at 17.

Statement 11 on its face does not assert that First Financial's net worth decline is bad or otherwise

abnormal because of Heyward.  Rather, Statement 11 points out as a factual assertion First

Financial's financial condition from early 2005 to the end of 2010.  To support a claim for

defamation, the asserted statement of fact must be false in a material way.  See Civ. U.J.I. 13-1006 N.M.R.A. ("To support a claim for defamation, the communication must be false.  One or more statements of fact in the communication must be false in a material way. Insignificant inaccuracies of expression are not sufficient.").  The Court cannot soundly conclude that, where Statement 11 asserts that the net worth of First Financial has dropped steadily -- which Heyward does not contend that it has not -- without noting that it has not dropped each and every consecutive month, Statement 11 is false in a material way.  Statement 11, therefore, is not actionable for defamation.

L.    **STATEMENT 12 -- "CRITICS ACKNOWLEDGE THAT CU'S WITH ALL SORTS OF MANAGEMENT HAVE LOST MONEY IN THE POOR ECONOMY SINCE 2008 BUT MAINTAINED THAT HEYWARD'S MANAGEMENT HAS LED FIRST FINANCIAL INTO A SIGNIFICANTLY DEEPER HOLE THAT IT WOULD HAVE BEEN IF HEYWARD WAS NOT CEO" -- IS NOT ACTIONABLE FOR DEFAMATION, BECAUSE IT IS NOT SUSCEPTIBLE TO BEING PROVED TRUE OR FALSE.**

Heyward contends that there are no facts to support Statement 12, because "[i]n order to sustain this statement, CU Times would have to objectively prove that First Financial is worse off as a direct result of Mr. Heyward being CEO."  Complaint ¶ 15l, at 9.  The Credit Union Times argues that this statement "is the quintessential kind of speculation that is incapable of being proven true or false, and therefore not properly subject to a defamation claim."  Motion to Dismiss at 17-18. The Court agrees with the Credit Union Times' argument.  In what financial condition First Financial might be without Heyward as CEO from 2005 to 2010 is not susceptible to being proved true or false.  There are no amount of facts that would prove what would have happened if Heyward was not the CEO; in other words, it is not possible to prove a hypothetical alternative to what was reality.  See Am. Broad. Cos., Inc. v. Gill, 6 S.W.3d 19, 44 (Tex. App. 1999)("[The alleged defamatory] [s]tatements . . . posit hypotheticals, as evidenced by . . . use of the words 'if' and 'suppose.' A hypothetical is not susceptible of proof and is therefore not actionable."), disapproved

-68-

<u>of</u> on <u>other</u> grounds <u>by</u> <u>Turner v. KTRK Television, Inc.</u>, 38 S.W.3d 103 (Tex. 2000).   No

reasonable person reading Statement 12 could plausibly infer that it is asserting as a provable

"statement of existing fact," as opposed to opinion, that First Financial would have been in a better

financial position from early 2005 to late 2010 had Heyward not been CEO during that period.

<u>Marchiondo v. Brown</u>, 98 N.M. at 404, 649 P.2d at 472.   Statement 12 is thus unambiguously

opinion and is not actionable for defamation as a matter of law.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Complaint (Incorporating

Authorities), filed Apr. 27, 2012 (Doc. 7), is granted in part and denied in part.   The Court dismisses

Heyward's defamation allegation to the extent that it relies on Statements 1, 2, 4, 6, 7, 8, 11, and 12,

because these statements are not actionable for defamation as a matter of law.   Because Statements

3, 5, 9, and 10 are not unambiguously expressions of opinion, the Court cannot properly dismiss

Heyward's defamation cause of action to the extent that it relies on these statements.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael L. Danoff
Ryan Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Christopher P. Beall
Levine Sullivan Koch & Schulz, LLP
Denver, Colorado

--and--

Elizabeth Koch
Levine Sullivan Koch & Schulz. LLP
Washington, D.C .

*Attorneys for the Defendant*